James HATHCOCK and Zoeanna Hathcock v.
ARKANSAS DEPARTMENT OF HUMAN SERVICES,
S.J. and J.H., Minor Children

01-885 69 S.W.3d 6

Supreme Court of Arkansas
Opinion delivered March 7, 2002
[Petition for rehearing denied April 11, 2002.]

*Jeff Rosenzweig*, for appellant James Hathcock.

Arkansas Department of Humans Services, by: *Dana McClain*; and *Lana Parks Davis*, for appellee.

TOM GLAZE, Justice. The Arkansas Department of Human Services (DHS) initiated this proceeding by obtaining an emergency order, dated April 23, 2000, which resulted in the removal of juveniles, S.H., J.H., and T.J.H. from the custody of their parents, Zoeanna and James Hathcock. In that order, the trial court set a probable cause hearing on April 30, 2001, which was held as scheduled. After the probable cause hearing, the trial court ordered T.J.H. to be returned to his parents, but directed the daughters, S.H. and J.H. to continue in DHS's custody. The trial court ordered that the father, James Hathcock, have no contact with his daughters, and in the same order, set an adjudication hearing for June 1, 2001.

On May 25, 2001, Hathcock filed a motion for continuance, asserting there was a possibility of criminal charges being filed against him involving allegations that Hathcock had sexually and physically abused his daughters, S.H. and J.H. Hathcock submitted that so long as he was the subject of a pending criminal investigation, he had no alternative but to decline to testify at the adjudication hearing, thereby exercising his Fifth Amendment rights. The

trial court denied Hathcock's request for continuance, finding that (1) any criminal charges filed against Hathcock were independent of the court's adjudication holding on the issues of dependency/neglect, (2) any adjudication order would be based on relevant information provided by persons other than Hathcock, and (3) under Ark. Code Ann. § 9-27-315(d)(2) (Repl. 2002), the trial court was under a mandated deadline to complete the adjudication.

The court conducted an adjudication hearing on June 1st and 15th of 2001, and continued DHS's custody of S.H. and J.H., finding, among other things, that Hathcock had returned to the parents' home, and the girls' mother, Zoeanna, had previously demonstrated she would not protect the girls. The court provided liberal supervised visitation for the mother, Zoeanna, but barred James Hathcock from having any contact with his daughters.

Hathcock now appeals the trial court's adjudication pursuant to Rule 2(c)(3) of our Rules of Appellate Procedure—Civil. His sole point for reversal is that the trial court erred in denying him a continuance of the adjudication proceeding, which included the same abuse allegations for which the State was criminally investigating him. We affirm.

Hathcock argues the trial court erred in ruling it could not grant a continuance of an adjudication hearing for more than fifty days after the emergency hearing. In reaching that decision, the trial court relied on section 9-27-315(d)(2) which reads as follows:

> The adjudication hearing *shall* be held within thirty (30) days of the emergency hearing, but *may be continued for no more than twenty (20) days following the first thirty (30) days* on motion of any party for good cause shown.

(Emphasis added.)

Citing *Ramirez v. White County Circuit Court*, 343 Ark. 372, 38 S.W.3d 298 (2001), Hathcock submits the word "shall," as used in section 9-27-315(d)(2), should be regarded as directory and not mandatory. Hathcock argues that the purpose of section 9-27-315(d)(2) is to provide a forum for the litigation of emergency issues and to return a child to his home if there is no probable cause or if the evidence does not support it. He contends the purpose of the statute is not defeated by the court's delaying the adjudication proceedings when he is willing to allow the status quo to continue

during the delay. In addition, Hathcock urges his argument is consistent with our general rule covering continuance requests under Rule 40(b) of the Rules of Civil Procedure, which provides that a trial court *may*, upon motion and for good cause shown, continue any case previously set for trial. Hathcock further argues that, unlike the continuance language in section 9-27-315(d)(2), the grant or denial of a motion for a continuance is generally within the sound discretion of the trial court, and the trial court's ruling will be reversed only if there is an abuse of discretion. *Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 934 (2000).

■■ Hathcock's arguments are misplaced for several reasons. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Ramirez*, 343 Ark. 372, 38 S.W.2d 298. If the language of a statute is clear and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Id.* Moreover, this court has consistently held that the word "shall," in a statute, means the legislature intended mandatory compliance with the statute unless such an interpretation would lead to an absurdity. *Id.*

■■ In the instant case, section 9-27-315(d)(2) is quite clear, and the statute's employment of the word "shall" merely assures that the statute's purpose will be met. The purposes of the provisions of the Arkansas Juvenile Code are set out in Ark. Code Ann. § 9-27-302 (Repl. 2002).[1] The paramount objective of the Act is best

---

[1] This subchapter shall be liberally construed to the end that its purposes may be carried out:

(1) To assure that all juveniles brought to the attention of the courts receive the guidance, care, and control, preferably in each juvenile's own home when the juvenile's health and safety are not at risk, which will best serve the emotional, mental, and physical welfare of the juvenile and the best interest of the state;

(2)(A) To preserve and strengthen the juvenile's family ties when it is in the best interest of the juvenile;

(B) To protect a juvenile by considering the juvenile's health and safety as the paramount concerns in determining whether or not to remove the juvenile from the custody of his or her parents or custodians, removing the juvenile only when the safety and protection of the public cannot adequately be safeguarded without such removal;

(C) When a juvenile is removed from his or her own family, to secure for him or her custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents, with primary emphasis on ensuring the health and safety of the juvenile while in the out-of-home placement; and

(D) To assure, in all cases in which a juvenile must be permanently removed from the custody of his or her parents, that the juvenile be placed in an approved family home and

stated in the emergency clause of Act 1337 of 1995 — an amendment to section 9-27-315 — which provides as follows:

> [I]n instances where a determination is to be made as to whether a child should remain in an abusive home, that decision should be made based upon the best interest [of] the child; . . . and . . . this act should go into effect as soon as possible so that the standard is made clear immediately that *the best interest of the child should always be the paramount consideration in determining whether a child is to remain in an abusive home.*

(Emphasis added.)

 To achieve the foregoing purpose, the Code provides for six-month periodic reviews, and, no later than twelve (12) months after the date the juvenile enters an out-of-home placement, the court shall hold a permanency planning hearing in order to enter a new disposition in the case. *See* Ark. Code Ann. §§ 9-27-337 and -338 (Repl. 2002). In the instant case, Hathcock's request for a continuance that could extend the statutorily required hearings past the fifty-day period established in section 9-27-315(d)(2) may well serve his purposes, but it unquestionably impedes Arkansas' statutory scheme, which is designed to expedite and insure that the children's best interests will be achieved. As for Hathcock's reliance on our Rule 40(b), we hold that the limited continuance provided in section 9-27-315(d)(2) of the Juvenile Code controls, since that statute deals with expediting hearings involving children in out-of-home placement situations and, as such, serves a specific purpose which is not in conflict with Rule 40(b). *See Citizens for a Safer Carroll County v. Epley*, 338 Ark. 61, 991 S.W.2d 562 (1999) (as a general rule, statutes are given deference so long as they are compatible with our rules).

Finally, Hathcock quotes extensively from the case of *Security Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C.

---

be made a member of the family by adoption;

(3) To protect society more effectively by substituting for retributive punishment, whenever possible, methods of offender rehabilitation and rehabilitative restitution, recognizing that the application of sanctions which are consistent with the seriousness of the offense is appropriate in all cases; and

(4) To provide means through which the provisions of this subchapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

Cir. 1980), in support of his assertion that the refusal to continue the adjudication hearing impinged on his constitutional rights against self incrimination. He refers to *Dresser* and quotes the following:

> The Constitution, therefore, does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. *See Baxter v. Palmigiano*, 425 U.S. 308, 98 S. Ct. 1551, 47 L. Ed. 2d 810 (1976); *DeVita v. Sills*, 422 F.2d 1172, 1181 (3d Cir. 1970). Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions "when the interests of justice seem to require such action, sometimes at the request of the prosecution, . . . sometimes at the request of the defense[.]" *United States v. Kordel, supra,* 397 U.S. at 12 n. 27, 90 S. Ct. at 770 (citations omitted); *see Horne Brothers, Inc. v. Laird*, 463 F.2d 1268, 1271-1272 (D.C. Cir. 1972). The court must make such determinations in the light of the particular circumstances of the case. Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.

*Dresser Indus.*, 628 F.2d at 1375-76.

Even the foregoing passage on which Hathcock relies fails to help him. For example, the court in *Dresser* points out the general rule that the Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings, but a court *may, in its discretion,* decide to stay such civil proceeding where the intent of justice seems to require a stay. *See also United States v. Kordel*, 397 U.S. 1 (1970) (recognizing that to require the government to choose between foregoing recommendation of a criminal prosecution once it seeks civil relief and deferring civil proceedings pending the ultimate outcome of a criminal trial would "stultify enforcement of federal law"). The public interests at stake here in Arkansas' Juvenile Code are to protect the State's juveniles who have been

reported abused, removed from their parents' custody, and placed in a foster-care home.

■ As already indicated above, any delay in affording children protection or in providing them with a permanency plan works against those children's welfare and best interests. In other words, delays in the noncriminal, dependency/neglect proceeding would only serve to injure the public interest and run counter to the purpose of Arkansas' adjudication hearings like the one now before us. Therefore, we conclude that the trial judge did not err in denying Hathcock's motion for continuance.

Affirmed.