Eleanor BELL et al.

v.

Roger TODD.

Court of Appeals of Tennessee,
at Nashville.

Assigned on Briefs Feb. 26, 2004.

Sept. 14, 2005.

Opinion Denying Petition for Rehearing
Sept. 26, 2005.

Permission to Appeal Denied by
Supreme Court March 20, 2006.

Roger M. Todd, Woodbury, Tennessee, Pro Se.

R. Steven Waldron and Terry A. Fann, Murfreesboro, Tennessee, for the appellees, Eleanor Bell, Rena Bell, Clay Bell, and Ricky Bell.

## OPINION

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

This appeal arises from a wrongful death suit filed by a murder victim's family against the person accused of the murder. The victim's family filed suit in the Circuit Court for Cannon County seeking compensatory and punitive damages from the accused and to set aside the accused's transfer of his real property to two friends following his arrest. After the accused failed to answer, the trial court granted the victim's family a default judgment on the question of liability, granted a writ of attachment for the accused's real property after setting aside the transfer as fraudulent, and ordered a jury trial on the question of damages. Thereafter, the accused filed a motion to set aside the default judgment, an answer, a motion to hold the trial in abeyance, and a motion to release funds to enable him to hire a lawyer. The trial court did not address these motions, and a jury awarded the victim's family $600,000 in compensatory damages and $80,000 in punitive damages. The accused murderer has appealed. We have determined that the judgment must be vacated because of the trial court's failure to address the accused murderer's pending motions before conducting the trial on the question of damages.

### I.

During the early morning hours of February 22, 2002, Eleanor Bell received a telephone call from the Warren County Sheriff's Department informing her that a truck owned by her son, Jeffrey Bell, had been found burned and deserted near the Cannon County and Warren County line. Ms. Bell immediately called her son on his cellular phone, but her son did not answer and failed to return her call. Several days later, Ms. Bell received a telephone call from Roger Todd inquiring into her son's whereabouts and requesting her to telephone him if she heard from her son. Several hours later, Mr. Bell's family reported him missing. On March 12, 2002, Mr. Bell's decapitated, dismembered, and burned body was found in a well.

On March 28, 2002, Roger Todd was arrested and charged with the first degree murder of Mr. Bell.[1] He has remained in the Cannon County jail since his arrest.

---

1. Mr. Todd, along with Marcus Odom and Jerry Stone, has been charged with Mr. Bell's murder. *State v. Odom,* Cannon Cir. No. F02–023B. No criminal trial had occurred by the time this appeal was filed.

Shortly after Mr. Todd was arrested, he made an oral agreement with two friends, Jimmy and Kimberly Duncan, to convey them his house and 3.92 acres of real property for one dollar in return for their agreement to use the property as security for a loan that would be used to hire a lawyer to represent him in the criminal proceedings. The Duncans acquired the property on April 7, 2002 and recorded a warranty deed on April 11, 2002.

In the meantime, on April 9, 2002, Mr. Bell's family filed a wrongful death action against Mr. Todd in the Circuit Court for Cannon County. Acting on information supplied by one of the sheriff's employees, the family also requested the trial court to issue a writ of attachment for Mr. Todd's property on the ground that he either had disposed of it or was about to dispose of it. The trial court issued the writ of attachment on April 9, 2002. On April 17, 2002, after the Duncans had recorded their deed, Mr. Bell's family amended their complaint to add the Duncans as defendants.

Mr. Todd was served with copies of the Bell family's complaint and amended complaint but failed to answer. The Duncans also failed to answer. On June 4, 2002, the Bell family moved for a default judgment. The Duncans then retained a lawyer who filed an answer and a motion to dissolve the writ of attachment on June 24, 2002. Mr. Todd, however, still failed to file an answer or other written response to the Bell family's complaint. On July 8, 2002, following a June 24, 2004 hearing on the default motion in which Mr. Todd participated, the trial court entered a default judgment against Mr. Todd on the question of liability and ordered a jury trial to assess damages.

The trial court conducted another hearing on July 16, 2002 regarding the Duncans' motion to dissolve the writ of attachment. Mr. Todd was present and represented himself at this hearing. On August 30, 2002, the trial court filed a letter opinion concluding that Mr. Todd's transfer of his property to the Duncans was a fraudulent transfer. Accordingly, the court entered an order on September 23, 2002 setting aside the conveyance and granting the writ of attachment.

In late October 2002, the trial court set the trial on damages for December 9, 2002. On November 25, 2002, Mr. Todd, still representing himself, filed several papers in the trial court, including: (1) a motion to set aside the default judgment, (2) an answer, (3) a motion to set civil trial date after criminal trial, and (4) a motion to release funds to enable him to retain "criminal and civil attorneys." The trial court never addressed any of these motions, ostensibly because Mr. Todd had failed to request that they be set for a hearing.

The trial on the issue of damages was held on December 9, 2002. Mr. Todd was present at this trial and participated in the proceeding without a lawyer. The jury awarded the Bell family $600,000 in compensatory damages and $80,000 in punitive damages. The trial court thereafter entered a judgment on the verdict, and Mr. Todd has appealed.[2]

## II.

### THE TRIAL COURT'S FAILURE TO ADDRESS MR. TODD'S PENDING MOTIONS

As a general matter, appellate courts will decline to consider issues that have not been raised by the parties. How-

---

2. The Duncans have not appealed from the order setting aside the transfer of Mr. Todd's property.

ever, appellate courts may, on their own motion, consider issues not explicitly raised by the parties in order to prevent injury to the public's interest or prejudice to the judicial process. Tenn. R.App. P. 13(d). *See, e.g., State v. Goodman,* 90 S.W.3d 557, 562 n. 3 (Tenn.2002); *Panzer v. King,* 743 S.W.2d 612, 616 (Tenn.1988). This appeal involves one of the rare occasions where fairness and justice require us to take up an issue that has not been explicitly raised.

Litigation involving self-represented litigants can be challenging and difficult. *Irvin v. City of Clarksville,* 767 S.W.2d 649, 651 (Tenn.Ct.App.1988). It can become even more difficult and cumbersome when the self-represented litigant is incarcerated. *Chastain v. Chastain,* No. M2003–02016–COA–R3–CV, 2004 WL 725277, at *2 (Tenn.Ct.App. Mar.22, 2004) (No Tenn. R.App. P. 11 application filed). However, an incarcerated litigant's right to meaningful access to the courts requires that the litigant be afforded a fair opportunity to present his or her side of the controversy. *Knight v. Knight,* 11 S.W.3d 898, 903 (Tenn.Ct.App.1999). To provide this opportunity, trial courts may be required to waive the Tennessee Rules of Civil Procedure's time requirements and to grant self-represented litigants extensions of time subject to reasonable time restric-

tions. *Logan v. Winstead,* 23 S.W.3d 297, 302 (Tenn.2000).

Appellate courts frequently have been confronted with cases in which the trial courts have disposed of claims either filed by or asserted against self-represented prisoners without first addressing the prisoner's pending motions. No matter whether the prisoner is the plaintiff or the defendant, reviewing courts have consistently held that trial courts err when they proceed to adjudicate the merits of the claim without first addressing the prisoner's pending motion or motions. These oversights have generally been found to be prejudicial rather than harmless because the failure to address pending motions "give[s] the impression that a litigant is being ignored," *Logan v. Winstead,* 23 S.W.3d at 303. We have also held that a prisoner's failure to comply with local rules requiring motions to be set for hearing does not provide a trial court with an excuse for failing to address the pending motions. *Chastain v. Chastain,* 2004 WL 725277, at *2. Accordingly, when a trial court has failed to rule on an incarcerated litigant's pending motions, reviewing courts have consistently vacated the judgment and remanded the case to the trial court with directions to consider and act on the pending motions.[3]

3. *See, e.g., Logan v. Winstead,* 23 S.W.3d at 303 (vacating a summary judgment dismissing a prisoner's legal malpractice claim because the trial court had not considered or acted upon the prisoner's motion to hold the case in abeyance); *Vermillion v. Vermillion,* No. E2001–00241–COA–R3–CV, 2002 WL 5496, at *2 (Tenn.Ct.App. Jan.2, 2002) (No Tenn. R.App. P. 11 application filed) (vacating a divorce decree against a prisoner because the trial court had not ruled on his motion to stay the proceeding pending his release); *State ex rel. Warren v. Ferguson,* No. W2000–02027–COA–R3–CV, 2001WL 987162, at *4 (Tenn.Ct.App. Aug.20, 2001) (No Tenn. R.App. P. 11 application filed) (vacating a default

judgment against a prisoner because the trial court had not ruled on pending pre-trial motions, including a discovery motion, a motion to be permitted to testify, and a motion to hold the case in abeyance); *Burton v. Gearin,* No. W1999–01022–COA–R3–CV, 2000 WL 1839129, at *2 (Tenn.Ct.App. Nov.29, 2000) (No Tenn. R.App. P. 11 application filed) (reversing a summary judgment dismissing a prisoner's legal malpractice claim because the trial court had failed to act on the prisoner's motion to hold the case in abeyance); *Thompson v. Hammond,* No. 02A01–9808–CV–00221, 1999 WL 188292, at *5–6 (Tenn.Ct. App. Apr.6, 1999) (No Tenn. R.App. P. 11 application filed) (reversing a summary judg-

In this case, the trial court proceeded with the damages portion of the trial against Mr. Todd without considering his motion to set aside the default judgment, his motion to hold the Bell family's claim against him in abeyance until the completion of the pending criminal trial, and his motion to release his funds to enable him to retain lawyers to represent him in both the pending civil and criminal proceedings. This was plain error, notwithstanding the fact that Mr. Todd had not requested a hearing on any of these motions. Accordingly, we vacate the judgment awarding compensatory and punitive damages against Mr. Todd and remand the case to the trial court with directions to consider and dispose of each of Mr. Todd's motions using the legal standards applicable to each of these motions and to enter an order specifying its reasons for either granting or denying each motion. *Logan v. Winstead*, 23 S.W.3d at 303.

### III.

#### REMAINING ISSUES RAISED ON APPEAL

Even though we have vacated the judgment for damages against Mr. Todd and have remanded the case for further proceedings in the trial court, we have determined that it is appropriate for us to address four other issues Mr. Todd has raised on appeal because doing so will prevent needless litigation and complexity on remand. These issues include Mr. Todd's claims that the trial court should have provided him appointed counsel, that the trial court should have granted his motion for stay, that the use of three witnesses' exhibits at the July 16, 2002 hearing was improper, and that the Cannon County Sheriff's Department interfered with his right to counsel.

### A.

#### Mr. Todd's Right to Appointed Counsel

■ With the exception of certain proceedings involving the termination of parental rights, it is now well-settled that there is no absolute right to counsel in a civil trial. *See Knight v. Knight*, 11 S.W.3d at 900; *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 953 (Tenn.Ct.App. 1989). Indigent civil litigants, unlike indigent criminal litigants, possess neither the constitutional nor the statutory right to court-appointed legal assistance. *Hessmer v. Miranda*, 138 S.W.3d 241, 245 (Tenn.Ct. App.2003); *Coakley v. Daniels*, 840 S.W.2d 367, 372 (Tenn.Ct.App.1992); *Lyon v. Lyon*, 765 S.W.2d 759, 763 (Tenn.Ct.App. 1988). Therefore, Mr. Todd's claim that he was entitled to appointed counsel is without merit.

### B.

#### The Use of Depositions at the July 16, 2002 Hearing

■ The July 16, 2002 hearing focused on the Bell family's request for a continuation of the writ of attachment on the property that Mr. Todd had conveyed to the Duncans and the Duncans' motion to dissolve that writ. Mr. Todd was present at this hearing and represented himself. The Duncans and the Bell family were both present with counsel. Messrs. Todd and Duncan testified at this hearing along with a Tennessee Home Loan Corporation employee, who was processing the Duncans' loan application, Jeffrey Bell's brother, and an employee of the Cannon County Sheriff's Department. In addition to this testimony, the Bell family's lawyer and the

ment dismissing a prisoner's complaint because the trial court had failed to act on the prisoner's motion to compel discovery).

Duncans' lawyer submitted, without objection from Mr. Todd, the depositions of Mr. Todd and Mr. and Ms. Duncan. Mr. Todd now takes issue with the introduction of the Duncans' depositions because he was not present when they were taken.

■ We cannot consider Mr. Todd's complaints regarding the taking and use of depositions because he failed to raise these issues at trial. Our jurisdiction is appellate only. Tenn.Code Ann. § 16–4–108(a)(1) (1994); *Smith v. Harriman Util. Bd.*, 26 S.W.3d 879, 887 (Tenn.Ct.App. 2000). Accordingly, we must decline to consider arguments that were not presented to the court below and that are being raised for the first time on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn.1991); *Williamson County Broad. Co. v. Intermedia Partners*, 987 S.W.2d 550, 553 (Tenn.Ct. App.1998); *Sweeney v. State Dep't of Transp.*, 744 S.W.2d 905, 906 (Tenn.Ct. App.1987).

■ Were we to consider this issue on its merits, we would conclude that the use of the Duncans' depositions at the July 16, 2002 hearing was not harmful error for four reasons. First, Mr. Duncan testified at the July 16, 2002 hearing and was available for examination by Mr. Todd at that time. Second, there is no indication in the record that Mr. Todd was refused access to the depositions prior to the hearing. Third, Mr. Todd has failed to point out any questions he desired to ask the deposed parties that had not been asked. Fourth, Mr. Todd's interests in this proceeding were aligned with the Duncans' interests. The Duncans were represented by counsel during the discovery prior to the hearing and also during the hearing. Therefore, as a practical matter, Mr. Todd's interest in upholding the validity of the conveyance of his property to the Duncans was likewise being protected, at least indirectly, by the Duncans' lawyer.

## C.

## Mr. Todd's Motion to Continue the Civil Proceeding

■ Mr. Todd requested the trial court to continue the civil proceeding until the pending criminal proceeding was completed. The court did not rule on this motion, and we have now directed the court to address this motion when the case is remanded. However, because of the pending criminal charges against Mr. Todd, this motion has several more facets than the common motions for a continuance.

■ Trial courts have broad power to control their dockets and the proceedings in their courts. *State v. King*, 40 S.W.3d 442, 449 (Tenn.2001); *Hessmer v. Hessmer*, 138 S.W.3d 901, 904 (Tenn.Ct. App.2003); *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn.Ct.App.2000). The exercise of this authority requires an exercise of judgment and the careful weighing of the competing interests. *See Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Accordingly, the decision whether to continue a case is a discretionary one. *State v. Thomas*, 158 S.W.3d 361, 392 (Tenn.2005); *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn.1997); *Morrow v. Drumwright*, 202 Tenn. 307, 311, 304 S.W.2d 313, 315 (1957).

■ While parties facing parallel civil and criminal proceedings are in an unenviable position, neither the United States Constitution nor the Constitution of the State of Tennessee provides them with blanket protection from the perils of contemporaneous civil and criminal proceedings. *United States v. Kordel*, 397 U.S. 1, 11, 90 S.Ct. 763, 769–70, 25 L.Ed.2d 1 (1970). Defendants are not absolutely en-

titled to a stay or continuance of civil litigation simply because criminal charges are pending against them. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.1995); *U.S. Commodity Futures Trading Comm'n v. A.S. Templeton Group, Inc.*, 297 F.Supp.2d 531, 534 (E.D.N.Y.2003); *Ex parte Oliver*, 864 So.2d 1064, 1066 (Ala.2003); *Hathcock v. Arkansas Dep't of Human Servs.*, 347 Ark. 819, 69 S.W.3d 6, 9 (2002). However, the pendency of parallel or related criminal proceedings may provide a basis for postponing the civil proceeding.

 The decision whether or not to stay civil litigation in deference to parallel criminal proceedings is discretionary. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir.2004). It requires the court to balance the interests of the party seeking to postpone the civil proceeding against the possible prejudice to the party who desires the civil litigation to go forward. *Ex parte Pegram*, 646 So.2d 644, 645–46 (Ala.1994). This balancing process is situation-specific and requires the court to take a careful look at the particular circumstances before it. *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C.Cir.1980). Courts customarily consider the following factors, among others, in deciding whether to stay a civil proceeding pending the resolution of a criminal case: (1) the extent to which the issues in the civil and criminal proceedings overlap, (2) the status of the criminal proceeding, (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay, (4) the hardship on the defendant, including the burden on the defendant if the cases go forward in tandem, (5) the

convenience of both the criminal and the civil courts, and (6) the interests of third parties and the public. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d at 78; *Maloney v. Gordon*, 328 F.Supp.2d 508, 511 (D.Del.2004).

The Tennessee Supreme Court now requires the courts to use a similar balancing test when incarcerated pro se litigants request that their case be held in abeyance until they are released from custody. *Logan v. Winstead*, 23 S.W.3d at 302 (requiring the courts to weigh the competing interests of the prisoner's ability to present proof and the burden on the judicial system and the defendant in continuing the prisoner's action). On remand, the trial court should use the factors set out above, as well as other factors that may be relevant, to determine whether or not to grant Mr. Todd's motion to stay the civil proceedings pending the completion of his criminal trial.

### D.

### The Conduct of the Cannon County Sheriff's Department

 Finally, Mr. Todd also argues that the damage award should be set aside because the Bell family's lawsuit was precipitated by the wrongful conduct of employees of the Cannon County Sheriff's Department. Specifically, he asserts that the sheriff's employees found out about his plans to convey his property to the Duncans and tipped off the Bell family. We find this argument flawed for two reasons. First, the record contains no evidence substantiating Mr. Todd's claims regarding the activities of the sheriff's employees.[4] Second, even if the evidence supported

---

**4.** During the July 16, 2002 hearing, the trial court sustained Mr. Todd's hearsay objection to a sheriff's employee's testimony regarding his source of information regarding Mr. Todd's transaction with the Duncans. The record does not contain a transcript of the December 9, 2002 hearing.

these claims, Mr. Todd has cited us no law, and our research has found none, that stands for the proposition that sheriff's employees cannot communicate lawfully obtained information to the families of victims.

■ Mr. Todd believes that the Cannon County Sheriff's Department and the Bell family have infringed upon his constitutionally protected right to assistance of counsel in the pending first degree murder proceeding. Specifically, he argues that the attachment of his property in the civil proceeding prevented him from using the proceeds of the sale of the property to retain a lawyer of his own choosing to represent him in the criminal case. This argument is based on an erroneous understanding of the right to counsel protected by both the Sixth Amendment to the United States Constitution and Article I, § 9 of the Constitution of Tennessee.

■ Persons accused of serious criminal offenses have a guaranteed right to the assistance of counsel. U.S. Const. amend. VI; Tenn. Const. Art. I, § 9. Persons who are able to afford to retain counsel have a qualified right to obtain counsel of their own choice. *Gandy v. Alabama,* 569 F.2d 1318,1323 (5th Cir.1978); *United States v. Inman,* 483 F.2d 738, 739–40 (4th Cir.1973); *Releford v. United States,* 288 F.2d 298, 301 (9th Cir.1961). Where parties cannot afford to retain counsel, the state must provide counsel for them. *Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). However, these persons are entitled only to the services of a competent counsel, not to the services of a lawyer of their own choosing. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *United States v. Davis,* 604 F.2d 474, 478 (7th Cir.1979); *State v. Huskey,* 82 S.W.3d 297, 305 (Tenn.Crim.App.2002).

■ The right to retain counsel does not carry with it an entitlement to funds that have been sequestered by a court to secure the interests of a claimant or the public. *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624–33, 109 S.Ct. 2646, 2651–56, 105 L.Ed.2d 528 (1989); *United States v. Monsanto,* 491 U.S. 600, 616, 109 S.Ct. 2657, 2666, 105 L.Ed.2d 512 (1989). While these cases involved sequestered property acquired by the defendants through the very criminal enterprises for which they were on trial, the principle applies to property that has not been obtained as a result of criminal activity. *R.G. v. Hall,* 37 Mass.App.Ct. 410, 640 N.E.2d 492, 494 (1994). However, in civil proceedings, a defendant's assets should be tied up no more than the realistic prospects of the plaintiff's recovery. Even an "unsavory" defendant is harmed more than necessary by encumbering far more assets than are at stake in the underlying litigation. *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 198 (3d Cir.1990). Courts considering a defendant's request to release sequestered funds to pay for legal representation should consider the amount of assets sequestered in light of the amount that the plaintiffs may reasonably recover. *See, e.g., Bank of Crete v. Koskotas,* No. 88 CIV.8412, 1988 WL 140877, at *4–5 (S.D.N.Y. Dec.19, 1988) (comparing the amount to be sequestered with the extent of the plaintiff's damages and the plaintiff's likelihood of success); *R.G. v. Hall,* 640 N.E.2d at 494–95 (directing the trial court to consider the amount to be sequestered with the amount that the plaintiffs may reasonably recover).

The Bell family has filed a wrongful death action against Mr. Todd seeking compensatory and punitive damages stemming from the death of Jeffrey Bell. Mr. Bell was forty-one years old when he was

murdered. Damages in cases of this sort consist of the pecuniary value of the decedent's life, *Hunter v. Ura*, 163 S.W.3d 686, 705 (Tenn.2005), which may include a parent's loss of consortium claim. *Hancock v. Chattanooga–Hamilton County Hosp.*, 54 S.W.3d 234, 236–37 (Tenn.2001).[5] There is no question that the pecuniary value of Mr. Bell's life exceeds the value of Mr. Todd's house and property. Accordingly, based on the record before us, no factual or legal justification exists for releasing any portion of Mr. Todd's assets or property.

## IV.

We vacate the judgment awarding the Bell family $600,000 in compensatory damages and $80,000 in punitive damages against Mr. Bell and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Roger Todd and jointly and severally to Eleanor Bell, Rena Bell, Clay Bell, and Ricky Bell for which execution, if necessary, may issue.

## OPINION DENYING PETITION FOR REHEARING

On September 14, 2005, we issued an opinion in this case vacating the trial court's judgment awarding compensatory and punitive damages to the Bell family. On September 21, 2005, the Bell family filed a petition for rehearing and a motion to consider post-judgment facts premised upon the February 2, 2005 convictions of Roger Todd for first degree murder, especially aggravated robbery, and especially aggravated kidnapping. The petition does not explain the reason for the delay in informing this court of these convictions.

The Bell family now insists that Mr. Todd's appeal is moot because he has been convicted on the murder of Jeffrey Bell. A case is moot when it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 185 Tenn. 623, 626, 207 S.W.2d 337, 338-39 (1948); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn.Ct.App. 1998); *Massengill v. Massengill*, 36 Tenn.App. 385, 388-89, 255 S.W.2d 1018, 1019 (1952).

This case does not present a situation in which the courts cannot provide relief to Mr. Todd. His subsequent convictions do not attenuate the trial court's error of proceeding, contrary to well-established law, to try the merits of the Bell family's claim without first disposing of Mr. Todd's pending motions. Mr. Todd, whether convicted or not, was entitled to have his motions considered and disposed of before the trial court rendered a judgment against him. He is still entitled to have his motions considered and disposed of even though the outcome of this civil proceeding may now be foreordained.

For these reasons, we grant the motion to reconsider post-judgment facts and respectfully deny the petition for rehearing and the motion to dismiss. Costs associated with this petition for rehearing are taxed to Eleanor Bell, Rena Bell, Clay Bell, and Ricky Bell.

**5.** Mr. Bell's siblings are seeking loss of consortium damages. Whether Tennessee recognizes an adult sibling's loss of consortium claim remains unclear. *See Rains v. Bend of the River*, 124 S.W.3d 580, 598 (Tenn.Ct.App. 2003).