

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2016 Session

## HERBERT S. MONCIER v. NINA HARRIS, ET AL.

Appeal from the Chancery Court for Knox County
No. 190527-2     Clarence E. Pridemore, Jr., Chancellor

_____

No. E2016-00209-COA-R3-CV

_____

This appeal involves a request for access to examine records under Tennessee Code Annotated section 10-7-505 in which the plaintiff sought the release of civil forfeiture documents from the Tennessee Department of Safety and Homeland Security. The trial court held that the plaintiff did not show sufficient cause for release of the sought after documents in a non-redacted format. We find that the issue has become moot owing to the legislative enactment of 2016 Tenn. Pub. Acts, Chapter 722, § 5. Accordingly, we vacate the trial court's judgment and dismiss this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Dismissed**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, C.J., joined.

Herbert S. Moncier, Knoxville, Tennessee, appellant pro se.

Herbert H. Slatery, III, Attorney General & Reporter, Andree S. Blumstein, Solicitor General, and Janet M. Kleinfelter, Deputy Attorney General, Nashville, Tennessee, for the appellees, Nina Harris, Joseph Bartlett, and William Gibbons.

## OPINION

## I. BACKGROUND

On July 20, 2015, Plaintiff Herbert S. Moncier ("Attorney") filed an official request with the Tennessee Department of Safety and Homeland Security's ("TDOSHS")

Legal Division – East ("the Department") to inspect any case files for which forfeiture warrants had been received since January 1, 2015. Attorney asserted this claim under Tennessee Code Annotated section 10-7-503 (2016), Tennessee's Public Disclosure Act. Paragraph (a) of said section provides:

> All state, county and municipal records . . . , except any public documents authorized to be destroyed by the county public records commission in accordance with § 10-7-404, shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

Tenn. Code Ann. § 10-7-504(a). Attorney contends that Tennessee Code Annotated section 40-33-204(g) holds that notice of seizures are public records. He asserts the trial court's ruling addressed only forfeiture warrants.

Due to the large number of files pertaining to the request (1,790 total), the Department notified Attorney that they would send him the files in installments of fifty at a time. The Department complied by sending the first installment on August 10, 2015. On August 11, 2015, the Department's staff attorney, Nina Harris, notified Attorney that address information had been removed from the notices of seizure and forfeiture warrants in compliance with Tennessee's Uniform Motor Vehicle Record Disclosure Act ("UMVRDA"), codified at Tennessee Code Annotated sections 55-25-101 to -112. Attorney expanded his request on August 17, 2015, asking for case-management sheets relating to each case file. The Department informed Attorney that this information was already included in the first installment and was to be included in future installments. The Department further explained that certain personal information, including addresses, would be redacted from all files sent to Attorney if it was obtained from motor-vehicle records under Tennessee's UMVRDA and under the federal Driver Privacy Protection Act ("DPPA"), codified at 18 U.S.C. sections 2721 to –25.

Under Tennessee Code Annotated sections 55-6-204(a), (b) and (e), the Department maintains copies of records of licenses, applications and denials for licenses, the names of licensees who had licenses suspended or revoked, and accident reports, court records for vehicle-related convictions and driver education completion certificates. In every application for a license, the applicant is required to submit personal information including full name, date of birth, country of residence, residence address and other information as required to determine eligibility. Tenn. Code Ann. § 55-50-321. The Department maintains a database within which the personal information of license-holders and applicants is stored. Similarly, the Department of Revenue maintains a vehicle registration database in accordance with statutes concerning motor vehicle title and registration. Tenn. Code Ann. §§ 55-1-101 to –110.

Civil forfeiture proceedings under Tennessee law are governed by Tennessee Code Annotated sections 40-33-201 to –215. Officers are required to prepare and deliver a "Notice of Seizure" receipt to persons in possession of property that is seized. Tennessee Code Annotated section 40-33-203 requires a Notice of Seizure to include the following:

> (1) A general description of the property seized and, if the property is money, the amount seized;
>
> (2) The date the property was seized and the date the notice of seizure was given to the person in possession of the seized property;
>
> (3) The vehicle identification number (VIN) if the property seized is a motor vehicle;
>
> (4) The reason the seizing officer believes the property is subject to seizure and forfeiture;
>
> (5) The procedure by which recovery of the property may be sought, including any time periods during which a claim for recovery must be submitted; and
>
> (6) The consequences that will attach if no claim for recovery is filed within the applicable time period.

Notices of Seizures also include, by necessity, the addresses of the person whose property was seized.

Officers are required to apply for a forfeiture warrant within five days of a seizure in which the owner was arrested. If the owner was not arrested, "the officer making the seizure shall present to the court, at the date and time specified on the notice of forfeiture warrant hearing, the application for a forfeiture warrant, the affidavit in support, the notice of seizure, and the notice of forfeiture warrant hearing." Tenn. Code Ann. § 40-33-204(b)(3). If a forfeiture warrant is granted by the judge, then "within seven (7) working days, [the officer shall] send the warrant, a copy of the affidavit and the notice of seizure to the applicable agency." Tenn. Code Ann. § 40-33-204(g). The case files requested by Attorney contain these Notices of Seizure, forfeiture warrants and other related documents.

Citizens may claim a right to property seized under Tennessee's civil forfeiture statutes by filing a claim in writing requesting a hearing and providing the person's interest in the property within thirty (30) days of receiving the forfeiture warrant. Tenn.

Code Ann. § 40-33-206(a). Attorney's initial request to the Department appears to be in the interest of obtaining address information for persons whose property was seized in order to contact those persons regarding legal services to potentially regain the seized property.

The Department handles in excess of 10,000 civil forfeiture cases per year. These cases originate from more than six hundred law enforcement agencies in Tennessee. Often citizens subject to asset seizure are, understandably, unwilling to provide personal information, including addresses, date of birth and other information. In such situations, the officer conducting the seizure utilizes the person's driver's license or consults the Department's database of motor vehicle records to acquire the information (address, date of birth, etc.). Similarly, when a person's driver license is out of date, officers utilize the same database to fill in the gaps.

Similarly, seizing officers utilize the Department of Revenue's vehicle registration database when seizing vehicles from persons who do not own the vehicle to be seized. Officers will search for the owners and personal information associated with the owner in the Department of Revenue's vehicle registration database.

Because the Department does not track when officers utilize these databases to fill in the gaps, the Department cannot adequately determine whether personal information, including addresses, on Notice of Seizures and subsequent documents in the seizure process was acquired from motor-vehicle records databases. For this reason, the Department redacted all addresses in the files received by Attorney, including from the Notices of Seizure, believing the redactions were required by the UMVRDA and the DPPA.

Attorney filed a Complaint for Access to Examine Records on October 23, 2015 pursuant to Tennessee's Public Disclosure Act under Tennessee Code Annotated section 10-7-505(a) against the Commissioner of the Department, Bill Gibbons, Harris, and Supervisor of the Department's Legal Division in the Eastern Section, Joseph Bartlett ("Officials"). Attorney's complaint first alleged Officials' redactions pursuant to Tennessee Code Annotated section 55-25-104 violated Art. I, §19 ("right to examine clause") and Art. XI, §16 ("Bill of Rights to remain inviolate") of the Tennessee Constitution. The complaint further alleged the redactions were a "pretext" for denying Attorney access to Public Records under Tennessee Code Annotated section 10-7-503(2)(A).

In response to Attorney's petition, the trial court issued a show cause order on November 3, 2015, pursuant to Tennessee Code Annotated section 10-7-505(b), ordering Officials to appear at a hearing on November 17, 2015.

On November 8, 2015, Attorney served a subpoena on Harris demanding both her

- 4 -

appearance at the show cause hearing and the production of various documents. Puzzlingly, Attorney's subpoena does not appear in the record. However, Officials filed a motion to quash on November 16, 2015, the day before the hearing. Their motion detailed that Attorney's subpoena also demanded Harris's presence and the production of additional documents, including internal manuals, memoranda, and operating procedures in addition to emails, faxes, letters and other modes of communication. Officials' motion argued that the subpoena was improper because (1) the text and narrow procedural guidelines of the petition process under the Public Records Act (Tenn. Code Ann. § 10-7-505(a)) prohibits the use of discovery tools such as subpoenas for show-cause hearings and (2) that case law interpreting the Public Records Act precludes using discovery methods in show-cause hearings generally, including subpoenas.

On the same day, Officials also filed a response to the petition and a supporting affidavit from the Assistant General Counsel for the Department. The affidavit of Assistant General Counsel Lizabeth Hale broadly covered the practices and policies of the Department regarding disclosing personal information in vehicle databases and the Department's communications with Attorney before the filing of the case before us. Officials' response asserted that (1) the Department's redactions were mandated by the UMVRDA, the DPPA, and by relevant state and Supreme Court precedent, (2) that neither the UMVRDA nor the DPPA violates the Tennessee Constitution because the right to access public records is not a constitutional right and may be limited by the General Assembly, and (3) that Tennessee's civil forfeiture statutes do not require agencies to acquire addresses of owners of seized property to be obtained from public records, and (4) that Officials are entitled to reasonable attorney's fees.

On November 17, 2015, the date of the show-cause hearing, Harris did not appear at the hearing nor did she produce the documents requested in Attorney's subpoena. The show-cause hearing occurred by proffers of exhibits. The trial court granted Officials' motion to quash Attorney's subpoena at the conclusion of the hearing without issuing a written opinion. Attorney filed a Rule 15 motion to amend his pleadings to ensure conformity to issues raised by Officials' Response, exhibits proffered at the hearing and the arguments of the parties at the hearing. Officials did not object to Attorney's Rule 15 motion to incorporate the issues raised in the areas previously mentioned (in Officials' initial Response and any evidence introduced at the show-cause hearing). Officials did object to Attorney's attempts under Tennessee Rule of Civil Procedure 10.04 to assert and attach evidence that was not raised in Official's Response, was not raised at the hearing, and was not raised by the exhibits proffered at the hearing. On January 15, 2016, the court denied Attorney's Motion to Amend without issuing an opinion.

The court issued its Findings of Fact, Conclusions of Law and Final Judgment on January 27, 2016, dismissing the petition with prejudice in favor of Officials. As to facts, it found that Attorney requested from the Department all forfeiture warrants from January 1, 2015 onward. We assume the court meant, and the record clearly reflects, that Attorney

requested entire case files, including forfeiture warrants and Notices of Seizure, in addition to other documents.

As to law, the court held that Tennessee's UMVRDA and the federal DPPA prohibit the Department from releasing addresses of individuals listed on forfeiture warrants (and we assume any other documents in the case files) that "may have" been obtained from either the Department's motor vehicle database (and we assume the Department of Revenue's database too). The court reasoned that the Department met its burden for showing cause in not releasing the information because there is "no discernible way" to determine whether addresses on forfeiture warrants (or any documents in the case files, we assume) were or were not obtained from either of the motor vehicle databases. As such, the court held that both the UMVRDA and DPPA prohibit the release of addresses without redaction.

The court further held that the UMVRDA does not violate Article I, section 19 of Tennessee's constitution by prohibiting the release of personal information such as addresses on forfeiture warrants (and we assume other documents in the case files, such as notices of seizure). The court reasoned that we have previously held that no constitutional right to inspect public records exists. Further, the court relied on the same case law in *Abernathy v. Whitley*, 838 S.W.2d 211–14 (Tenn. Ct. App. 1992) to reaffirm the principle that the legislature has the "power to create, limit, or abolish a right which is not conferred by the Constitution." Attorney filed this timely appeal.

### III. ISSUES

We have consolidated the issues on appeal as follows:

> 1. Whether the enactment of 2016 Tenn. Pub Acts, Ch. 722 has rendered this appeal moot?
>
> 2. Whether the trial court correctly held that Tennessee's UMVRDA does not violate Art. I, § 19 of the Tennessee Constitution?
>
> 3. Whether the trial court properly held that Harris had met her burden of proof for the show cause order under Tennessee Code Annotated § 10-7-505?
>
> 4. Whether the trial court abused its discretion in granting Harris's motion to quash Attorney's subpoena and in denying Attorney's post-hearing motion for leave to amend his petition?

## III. STANDARD OF REVIEW

A court's findings of fact are reviewed de novo with a presumption of correctness, unless the evidence preponderates against it. Tenn. R. App. P. 13(d). Determining whether the Tennessee Public Records Act applies to specific records in a party's control is a question of law, and, as such, we review the trial court's conclusions of law de novo with no presumption of correctness. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002). Determining whether a case is moot is also a question of law. *Alliance for Native Am. Indian Rights in Tennessee, Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005).

We review a motion to quash a subpoena under an abuse of discretion standard, examining whether the trial court "(1) applie[d] an incorrect legal standard, (2) reache[d] an illogical or unreasonable decision, or (3) base[d] its decision on a clearly erroneous assessment of the evidence." *State v. Mangrum*, 403 S.W.3d 152, 166 (Tenn. 2013). Similarly, a trial court's decision to deny a motion to amend pleadings may only be overturned upon a showing of an abuse of discretion. *Smith v. King's Daughters and Sons Home*, No. W2015–00435–COA–R3–CV, 2015 WL 8730834, at \*5 (Tenn. Ct. App. 2015).

## IV. DISCUSSION

The first issue we will address is whether the matter before us has been rendered moot by a recent enactment of the Tennessee General Assembly. We hold that the case is now moot, and, subsequently, the trial court's order should be vacated.

Tennessee's justiciability doctrines require that a case remain a live controversy from its infancy until its appellate conclusion. *Cisneros v. Cisneros*, No. M2013–00213–COA–R3–CV, 2015 WL 7720274, at \*7 (Tenn. Ct. App. 2015) (citing *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203–04 (Tenn. 2009) ("Norma Faye")). Whereas justiciability doctrines such as ripeness and standing focus on a suit's birth, the focus in a mootness inquiry is on a suit's death. *Norma Faye*, 301 S.W.3d at 204 (citing 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper Federal Practice and Procedure § 3533.1, at 735–37). A case ceases to be justiciable and becomes moot "because of a court decision, the acts of the parties, or some other reason occurring after its commencement." *Norma Faye*, 301 S.W.3d at 204 (citing *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 625 (Tenn. 2008); *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945); *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994)). Essentially, a case is moot if "it no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.* (citing *Knott v. Stewart Cnty.*, 207 S.W.2d 337, 338–39 (Tenn. 1948); *Bell v. Todd*, 206 S.W.3d 86, 96 (Tenn. Ct. App. 2005); *Massengill v. Massengill*, 255 S.W.2d 1018, 1019 (Tenn. 1952)).

The Tennessee Supreme Court addressed the mootness doctrine in Tennessee in *Norma Faye*, explaining that absent an explicit "constitutional imperative[,] . . . decisions to dismiss a case on the ground of mootness require the exercise of judgment based on the *facts* and *circumstances* of the case." *Id.,* 301 S.W.3d. at 204 (emphasis added). This requires a two-part inquiry: first, we examine as a matter of law whether the case has become moot owing to a "court decision, the acts of the parties, or some other reason occurring after its commencement." *Id.* Second, if the controversy at issue is determined to be moot, we do not apply the doctrine "mechanically[,]" but, rather, we must examine whether the issue at controversy meets one or more of the circumstances for not invoking the mootness doctrine. *Id.* These circumstances, or factors, include:

> (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

*Id.*

First, we examine whether this suit has become moot owing to the enactment of 2016 Tenn. Pub. Acts, Ch. 722, section 5. Originating as House Bill 2052, 2015 Gen. Assemb., Reg. Sess. (Tenn. 2015), and signed into law on April 26, 2016 (effective July 1, 2016), this enactment made several changes, inter alia, to Tennessee's Public Disclosure Act codified at Tennessee Code Annotated section 10-7-503 et seq. The change that Officials contend is dispositive is the addition of Tennessee Code Annotated section 10-7-504(a)(29) (other amendments to the statute have made the pertinent sections appear in (a)(29) rather than in (a)(28) as Officials contended in their brief). The amendment added the following provision at Tennessee Code Annotated section 10-7-504(a)(29):

> (29)(A) No governmental entity shall publicly disclose *personally identifying information* of any citizen of the state unless:
>> (i) Permission is given by the citizen;
>> (ii) Distribution is authorized under state or federal law; . . .
>> (C) For purposes of this subdivision (a)(29), "personally identifying information" means:
>> (i) Social security numbers;
>> (ii) Official state or government issued driver licenses or identification numbers;

(iii) Alien registration numbers or passport numbers;

(iv) Employer or taxpayer identification numbers;

(v) Unique biometric data, such as fingerprints, voice prints, retina or iris images, or other unique physical representations; or

(vi) Unique electronic identification numbers, *addresses*, routing codes *or other personal identifying data* which enables an individual to obtain merchandise or service or to otherwise financially encumber the legitimate possessor of the identifying data.

*Id.* (emphasis added). Officials contend that pursuant to this statutory provision, "addresses . . . or other personal identifying data" of citizens are confidential and not subject to disclosure under the Public Records Act, regardless of whether the address was obtained from or in connection with a motor vehicle record or from another source.

Because the issue of mootness here "hinges upon principles of statutory construction," whether Tennessee Code Annotated 10-7-504(a)(29)(C) prohibits disclosure of residential addresses, we must "ascertain and give effect to the legislative intent without unduly restricting or expanding [the] statute's coverage beyond its intended scope." *Memphis Publ'g. Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002). The statute prior to and after the 2016 amendment includes language that it "shall be broadly construed so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d) (2016). As such, "we interpret the terms of the Act liberally to enforce the public interest in open access to the records of state, county, and municipal governmental entities." *Memphis Publ'g.*, 87 S.W.3d at 74.

Statutory construction requires the courts to "ascertain and to carry out the General Assembly's intent." *Norma Faye*, 301 S.W.3d at 213 (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)). The intent of a statute is often "reflected in the statute's words, and, therefore, we must focus initially on the words of the statute." *Norma Faye*, 301 S.W.3d at 213. (citing *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). "When the words of the statute are clear and unambiguous, we need not look beyond the statute, but rather, we must simply enforce the statute as it is written." *Norma Faye*, 301 S.W.3d at 213 (citing *Green v. Green*, 293 S.W.3d 493, 507 (Tenn.2009); *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn.2009)).

Here, the amended statute prohibits the disclosure of "personally identifying information of any citizen of the state" which includes "addresses . . . or other personal identifying data which enables an individual to obtain merchandise or service or to otherwise financially encumber the legitimate possessor of the identifying data." Tenn. Code Ann. § 10-7-504(a)(29). The plain language of this statute is not ambiguous and

"does not require us to consult dictionaries or resort to canons of construction." *Norma Faye*, 301 S.W.3d at 213. The statute prohibits the disclosure of certain information that the General Assembly believed could "financially encumber" the legitimate possessor of the identifying data," and it clearly includes addresses. In common vernacular and understanding and in context of the subsection protecting personally identifying information, "addresses" clearly refers to the residential addresses of citizens of Tennessee.

The "common sense" reading of the preceding language suggests that the word "electronic" at the beginning of Tennessee Code Annotated section 10-7-504(a)(29)(C) is only referring to identification numbers, and it is separated by two other words and a comma from the word "addresses." *See Norma Faye*, 301 S.W.3d at 213 (holding under a common sense reading that "[a] local government 'exercises' its eminent domain power when it files a complaint in court seeking to condemn private property. . . . [T]he plain, common sense interpretation of Tenn. Code Ann. § 13–16–207(f) requires a local government to obtain the required certificate before filing its complaint."). Therefore, the statute applies to citizens' addresses in both paper and electronic formats.

The use of "addresses" in other parts of the original statute also include reference to "residential street addresses" and city, state and zip code, *see* Tennessee Code Annotated section 10-7-504(f)(1)(D), and also "home and work addresses[,]" *see id.* at section 10-7-504(j)(2). However, the 2016 amendment only uses the word "address" once, and it appears only in the dispositive section. *See* 2016 Tenn. Pub. Acts, Ch. 722, § 5. Further, the other sections of the original statute where the word "address" is utilized are generally in sub-sections that are self-limited to the subsection in which the word appears. *See, e.g.*, Tenn. Code Ann. § 10-7-504(a)(15) to -(16).

Attorney, alternatively, argues that the language of Tennessee's civil forfeiture statutes establish that the documents at issue here, Notices of Seizures and forfeiture warrants, are "public records" per Tennessee Code Annotated section 40-33-204(g). Attorney asserts that language trumps the 2016 amendment to the Public Records Act. Further, Attorney contends that the description of "personally identifying information" refers to electronic records, not the paper documents Attorney seeks in the form of Notice of Seizures and forfeiture warrants.

Examining the facts and circumstances presented here by the statutory addition, *Norma Faye*, 301 S.W.3d at 204, we find Attorney's first argument against mootness unpersuasive. Supporting the clear and unambiguous language of the statute to the contrary of Attorney's position, the title of the amending legislation states it is an "Act to amend Tennessee Code Annotated . . . Title 10 . . . relative to *protecting* personally identifying information in public records." 2016 Tenn. Pub. Acts, Ch. 722. (emphasis added). As such, the legislative history reflects that the purpose of the amendment was to protect certain personally identifying information that the General Assembly believed

needed protecting, such as the information listed under Tennessee Code Annotated section 10-7-504(a)(29)(C). This enactment was carried out *because* potentially personally identifying information is located in public records.

Further, Tennessee Code Annotated section 10-7-504(a)(29) is a completely new addition that brought entirely new categories of personal information under a confidential umbrella, supporting the legislature's intent to limit the Public Disclosure Act. *See* Tenn. Code Ann. § 10-7-504(a)(29). Further, Tennessee Code Annotated section 40-33-203(g)'s defining of certain documents as "public records" does not support Attorney's assertion that such a definition is an "authoriz[ation] under state or federal law" that would permit the release of information under Tennessee Code Annotated section 10-7-504(a)(29). As noted above, the purpose of the recent amendment to the Public Disclosure Act was to protect personal information that existed in public records. This support is bolstered by the inclusion of redaction language for confidential information in other parts of the bill. *See* 2016 Tenn. Pub. Acts, Ch. 722, § 2 (codified at Tennessee Code Annotated § 10-7-503(a)(5) ("Information made confidential by state law shall be redacted whenever possible, and the redacted record shall be made available for inspection and copying.")).

Second, Attorney's argument that "personally identifying information" listed in Tennessee Code Annotated section 10-7-504(a)(29)(C)(vi) refers only to electronic documents and not the paper documents he seeks is without merit. Under that rationale, paper documents with the very same information (routing codes, unique electronic identification numbers and other data that could financially harm the legitimate owner) would be disclosable, to the detriment of citizens everywhere. Such a construction cannot stand. *See Norma Faye*, 301 S.W.3d at 204.

For the foregoing reasons, we hold that the enactment of Chapter 722 amending the Public Records Act is "some other reason occurring after [this lawsuit's] commencement" that renders this appeal moot owing to the General Assembly's explicit statutory prohibition on publicly disclosing citizens' addresses, specifically, here relating to Notices of Seizures, forfeiture warrants and related documents in the Department's case files. *Norma Faye*, 301 S.W.3d at 204.

Officials contend that the 2016 statutory amendment, specifically Tennessee Code Annotated section 10-7-504(a)(29)(A) and (C)(vi), prohibits Public Disclosure Act releases of any addresses of any citizens of the state, regardless of whether the addresses were obtained from motor vehicle databases. We do not address that broad issue here. Our holding is narrowly applicable to the documents in question: Notices of Seizure, forfeiture warrants, and other documents held by the Department in civil forfeiture case files requested by Attorney.

Next, we turn to whether any of the *Norma Faye* factors are applicable and

whether this appeal should progress notwithstanding our finding of mootness. *Norma Faye*, 301 S.W.3d at 204. Attorney asserts all four factors apply in this situation. We disagree.

First, the challenged conduct, redacting addresses, is now explicitly permitted by statute, and, as such, it is statutorily required conduct rather than "capable of repetition and of such short duration that it will evade judicial review." *Id.* at 204. Second, the only "collateral consequences" that remain are Attorney's inability to obtain addresses and, subsequently, mail advertisements to potential clients who have had property seized under civil forfeiture statutes. *Id.* Attorney still maintains the ability to advertise his services through numerous other likely more effective methods and means, including print, television, radio, and internet advertising. Third, Officials have not voluntarily ceased engaging in the conduct and are now required to redact addresses under the 2016 amendment, so that factor is irrelevant.

Threshold considerations must be analyzed with regards to the fourth factor, when the "issue is of great public importance or affects the administration of justice," including:

> (1) the public interest exception should not be invoked in cases affecting only private rights and claims personal to the parties; (2) the public interest exception should be invoked only with regard to "issues of great importance to the public and the administration of justice"; (3) the public interest exception should not be invoked if the issue is unlikely to arise in the future; and (4) the public interest exception should not be invoked if the record is inadequate or if the issue has not been effectively addressed in the earlier proceedings.

*Id.* at 210–11. If the case before us fails to meet any of these considerations, the public interest exception will not apply. *Id.*

First, this case fails to meet the first threshold because it only affects the private rights of Attorney, a private citizen, seeking addresses from the Department for the purpose of soliciting clients for his law practice. Second, the General Assembly has clearly stated its public policy preference in the interest of protecting personally identifying information in public records, such as addresses, by passing Chapter 722 and amending Tennessee Code Annotated section 10-7-504. As such, the divulging of personally identifying information per Attorney's request runs contrary to being an issue of "great importance to the public and the administration of justice." *Id.* Third, the issue cannot be re-litigated in the future because Chapter 722 has ratified and authorized the Department's redaction of addresses, effectively eliminating the chance of future litigation over the issue.

- 12 -

As to the fourth factor, even if it has merit, the failure to meet the first three factors precludes the issue and requires us to hold that the public interest exception to the mootness doctrine is inapplicable in the instant case. Therefore, none of the *Norma Faye* factors apply in the instant case and this appeal is moot. The other issues raised are hereby pretermitted due to our finding of mootness.

## V. CONCLUSION

For the foregoing reasons, we hold that this appeal has become moot and the judgment of the trial court is vacated and this case is dismissed. Costs of this appeal are taxed to Appellant, Herbert S. Moncier.

_____
JOHN W. MCCLARTY, JUDGE