FILED
08/17/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 8, 2017 Session

## MARSHA ANN NULL v. KENNETH ANDREW CUMMINS

**Appeal from the General Sessions Court for White County**
**No. CV-14956        Sammie E. Benningfield, Jr., Judge**

_____

**No. M2017-00191-COA-R3-CV**

_____

This appeal arises from post-divorce efforts to modify a permanent parenting plan. In her petition to modify, Mother set forth distinct material changes in circumstances she claimed warranted either a change in custody or a change in the residential parenting schedule. Specifically, the petition alleged, among other things, that Father interfered with Mother's visitation and her ability to be more involved in the children's lives. The court found Mother did not prove any of the factual allegations in her petition by a preponderance of the evidence and thus found no material change in circumstances. From this ruling, Mother appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J, M.S., and THOMAS R. FRIERSON II, J., joined.

Kelsy Miller, Cookeville, Tennessee, for the appellant, Marsha Ann Null.

Cindy Morgan, Sparta, Tennessee, for the appellee, Kenneth Andrew Cummins.

## OPINION

### I.

On February 8, 2016, in the General Sessions Court for White County, Tennessee, Marsha Ann Null ("Mother") filed a petition against her former husband, Kenneth Andrew Cummins ("Father"), to modify their agreed permanent parenting plan. Mother also sought to modify her child support obligation. The agreed parenting plan, which had

been approved on October 4, 2011, related to two children born of the marriage: a boy born in October 2005 and a girl born in July 2007. The plan designated Father as the primary residential parent, granting him 302 days of parenting time each year. Mother received 63 days under the plan.

In her modification petition, Mother asserted specific material changes of circumstance had occurred since approval of the agreed parenting plan. In pertinent part, the petition alleged as follows:

> 3. There has been a material change in that the minor children, now seven (7) and ten (10) years old, has [sic] expressed an interest in residing primarily with their Mother.
>
> 4. Further, the Father has repeatedly thwarted the efforts of the Mother to be involved in the medical decisions regarding the minor children, in violation of the previous Permanent Parenting Plan ordered by this Court.
>
> 5. Father has denied the Mother information regarding the doctor's or counselor's visits of the children.
>
> 6. Father has also placed barriers before the Mother when it comes to the education of the children, or the Mother's involvement with the children's school. The Father's current girlfriend is able to pick up the children from the school, but the Father has ensured that the Mother cannot pick up the minor children from the school.
>
> 7. Father has repeatedly, on numerous occasions, either denied Mother her visitation that is dictated in the Permanent Parenting Plan, or placed stipulations upon her visitation.

Mother further asserted that these alleged facts "justif[ied] a change in the primary residential parent designation, or in the alternative, enough to justify a change in the parenting schedule between the parties." Mother appended to her modification petition a proposed parenting plan, designating Mother as the primary residential parent and granting her 285 days of parenting time.

Father filed a response, generally denying all material allegations in Mother's petition. Father did admit that, on one occasion, he did not allow Mother to transport the children in her car because there was insufficient room in the vehicle. Instead, Father alleged that he drove the children to Mother's home for her so that she could exercise her parenting time. Mother would later corroborate Father's description of the incident.

2

The court held a one-day trial. During opening statements, Mother's counsel identified the factual allegations that she sought to prove:

There's been several instances where the father has tried to control mother's visits, or there's been a lot of instances where he's not including her in the decision-making for the children. She's hit a lot of barriers when it comes to finding out what's going on with physicians, with doctors, and counselors, and at school. She's not even able to pick the children up from school. She wasn't listed on the emergency contact. And we are going to present the evidence for that.

At the conclusion of trial, Father's counsel made an oral motion to dismiss the petition to modify for failure to prove the facts allegedly constituting material changes in circumstance. Father's counsel discussed each allegation in turn and explained how the proof fell short. In response, Mother's counsel suggested that a mere passage of time could constitute a material change in circumstance justifying a change in the visitation schedule. The trial court asked a few follow-up questions directed at Mother's arguments and proof. Mother's counsel then raised another material change in circumstance:

But the other material change in circumstance is that from 2011 when [the parties] got divorced, [Mother] wasn't employed, didn't have a job. Now she's got a job. She's got stable housing. She has a 4-bedroom home where these children can stay. The father has moved into a two-bedroom home where there's four children and two adults living.

The court denied Mother's petition to modify. The court found, among other things, that the allegations in Mother's petition as to a material change in circumstance were unsubstantiated. According to the court, "[t]here's been no proof at all brought to the Court about the needs of the children that warrant a change in circumstances" and "[t]here's been no proof about the needs of the children not being met because of this or that, such that the Court ought to revisit that." The court also found that "if nothing else, . . . the Mother comes to this Court with unclean hands" because "she paid nothing" in child support. From this decision, Mother appealed.[1]

## II.

We review the trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). We review

---

[1] Based on increased income, the court also recalculated Mother's child support obligation and ordered her to pay $419 per month. Mother does not raise her increased child support obligation as an issue on appeal.

the trial court's conclusions of law de novo with no presumption of correctness. Tenn. R. App. P. 13(d).

All final divorce decrees involving a minor child must include a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a) (2017). Once a permanent parenting plan is incorporated in a final divorce decree, absent an agreement, the parties must comply with the plan's terms unless they are modified by the court. *Id.* § 36-6-405(b). Tennessee courts apply a two-step analysis to requests for either a modification of the primary residential parent or the residential parenting schedule. *See, e.g., In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *11-12 (Tenn. Ct. App. Feb. 12, 2014) (primary residential parent modification); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (parenting time modification). The threshold issue is whether a material change in circumstance has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(B). Only if a material change in circumstance has occurred do we consider whether a modification to the parenting plan is in the child's best interest by examining the statutory best interest factors. *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003).

A change in circumstance with regard to a residential parenting schedule is "a distinct concept" from a change in circumstance with regard to custody. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). In the context of a modification of custody, also known as a change in the primary residential parent, a material change in circumstance may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B). Although there are "no hard and fast rules" for determining when a material change in circumstance has occurred, factors for our consideration include: (1) whether the change occurred after entry of the order sought to be modified; (2) whether the change was known or reasonably anticipated when the order was entered; and (3) whether the change affects the child's well-being in a meaningful way. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Not every change in circumstance is a material change; "[t]he change must be 'significant' before it will be considered material." *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007).

The threshold for establishing a material change in circumstance where the issue before the court is a modification of the residential parenting schedule is much lower than where the issue is modification of custody. *See, e.g., Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). The petitioner still must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest," and like a material change for modification of the primary residential parent, the change must have occurred after entry of the order sought to be modified. Tenn. Code Ann. § 36-6-101(a)(2)(C); *Caldwell v.*

4

*Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007). But, unlike the standard for a change of primary residential parent, whether the change was reasonably anticipated when the prior plan was entered is irrelevant. *Armbrister*, 414 S.W.3d at 703. To modify a residential parenting schedule, "merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006). A material change of circumstance in this context may include, but is not limited to:

> [S]ignificant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C).

The "determination of whether a material change of circumstances has occurred" is a question of fact. *Armbrister*, 414 S.W.3d at 692. The parent seeking a modification of the permanent parenting plan has the burden of proving a material change by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C).

As in every primary residential parent or parenting time determination, the child's needs are paramount; the desires and behaviors of the parents are secondary. *See In re T.C.D.*, 261 S.W.3d at 742.

On appeal, Mother argues the court erred by "not applying the appropriate standards when looking for what may constitute a material change in circumstances even to justify a change in the schedule." As we perceive it, Mother mainly takes issue with the court's finding that Mother did not prove a material change in circumstance even under the lower threshold to modify the residential parenting schedule.[2]

The court found Mother failed to prove any of the factual allegations specifically mentioned in her petition to modify. Mother disputes some of the court's findings of fact that factored into its decision to reject these allegations. Specifically, she argues the court erred when it found that she made "no affirmative actions" to find out information or

---

[2] Mother's brief does not explicitly raise an issue with the court's finding of no material change in circumstance sufficient to justify changing custody, and at oral argument, Mother's counsel did not directly answer the question of whether she also took issue with this finding. In any event, based on our determination that the evidence does not preponderate against the finding that Mother failed to prove a material change in circumstance sufficient to modify the residential parenting schedule, we do not reach this issue.

become involved in the children's lives and that there was "no evidence" Mother requested certain things from Father and where Father has said "No you can't have them." As support for her position, Mother points to her own testimony and the children's paternal great-grandmother's testimony, which showed that she made some effort to obtain information but that Father made it difficult for Mother to obtain the information she sought. Mother argues that, because there was proof in the record that she requested information from the children's doctor and Father, the court's finding of "no affirmative actions" on her part was a "clearly erroneous conclusion."

Contrary to Mother's assertions, the court's order actually states: "Quite the *majority of the proof* is that the Mother has made no affirmative actions to find out any information. And anything she has asked of the Father, he's told her." Despite Mother's contention otherwise, the court did not find that Mother made absolutely no effort at all; rather, it essentially found Mother made minimal efforts in seeking out the children's educational or medical information.

The evidence does not preponderate against the court's findings. Here, Mother testified as to her very limited involvement in the children's education despite receiving this information from Father's family and despite having the ability to contact the school directly. Over the five-year span following the entry of the parenting plan, Mother attended only three of the children's school activities, despite either not working or only working part-time.[3]

For his part, Father denied interfering with Mother's ability to participate in the children's lives. Father testified that Mother was made aware of the children's appointments, including appointments with their new doctor, but she chose not to attend most of the appointments. And Father denied interfering with Mother's ability to receive information directly from the children's school. Mother eventually admitted that, once she provided the parenting plan to the children's school and the doctor's office, she was able to obtain the information she sought.

Although Mother argues Father "admitted[] that she would ask the Father about activities at school and at times would get no response," Mother takes Father's testimony out of context. Father explained that Mother frequently asked for information when he was already at work or when no activities were scheduled at school. According to Father, he would provide Mother with the information that was within his knowledge at the time and in fact did provide her with the children's grades. The trial court credited Father's proof on this issue, and we will not second guess the court's credibility determination. *See Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 733-34 (Tenn. 2002) ("[F]indings

---

[3] One of the children's teachers, a witness called by Mother, testified she had not seen Mother at a parent-teacher conference. Mother admitted as much.

with respect to credibility and the weight of the evidence . . . may be inferred from the manner in which the trial court resolves conflicts in the testimony and decides the case.").

Mother next argues the trial court erred in only considering the "few specific averments" in her petition in its determination of whether a material change in circumstance existed. At the conclusion of trial, Mother argued that her job or house were "other" material changes in circumstance that the trial court should consider.[4]

Unlike the changes of circumstance alleged in the petition to modify, the trial court's order did not specifically address the alternative changes of circumstance Mother raised after the close of her proof. The order did find that there had been no proof "about the needs of the children that warrant a change in circumstances." The court further found that the proof had "all been about Mother's preference." But even considering the changes outside of those alleged in the petition to modify, Mother's proof fell short.

Although it was not alleged in her petition, Mother suggested her new job could constitute a material change in circumstance. A material change in circumstance may include "significant changes in the parent's . . . working condition that significantly affect parenting." Tenn. Code Ann. § 36-6-101(a)(2)(C). Here, as previously discussed, the proof showed that, from 2011 through 2015, when Mother was either unemployed or was working only part-time, she attended only three of the children's school activities. At the time of trial, Mother was working forty to fifty hours per week from 3 p.m. to 11:30 p.m. Mother sought at least every other week with the children, but Mother conceded that she would not be able to pick the children up from school and would get off work well past their bedtime. Mother offered no proof of who would care for her children while she worked. Although Mother maintained that her work schedule was only temporary, she did not know when it would change. Mother simply failed to show that her new job affected her parenting in a significant way or that the current parenting schedule was unworkable because of her schedule. *See Boyer*, 238 S.W.3d at 257 ("[E]vidence that an existing custody arrangement was proven unworkable in a significant way is sufficient to satisfy the 'material change in circumstances' standard.").

Although it was not alleged in her petition, Mother also suggested her new home could constitute a material change in circumstance. A material change in circumstance may also include "significant changes in the parent's living . . . condition that significantly affect parenting." Tenn. Code Ann. § 36-6-101(a)(2)(C). The proof as to

---

[4] Mother continues to expand the grounds for modification of the parenting plan. On appeal, Mother argues that her marriage and her "good relationship with Father's extended family" constituted material changes in circumstance. Because she failed to make these arguments in the trial court below, we deem these arguments waived. *See Bell v. Todd*, 206 S.W.3d 86, 93 (Tenn. Ct. App. 2005) ("[W]e must decline to consider arguments that were not presented to the court below and that are being raised for the first time on appeal.").

her new four-bedroom home consisted of Mother's own testimony and photographs of the children's rooms, toys, and clothing inside the new home. Mother testified that she and her husband rent their current home from Father's aunt and that no other children lived in the home. But there was no testimony about how the change in living condition would impact parenting.[5] *See Boyer*, 238 S.W.3d at 257 ("Not every change in the circumstances of either a child or a parent will qualify as a material change in circumstances. The change must be 'significant' before it will be considered material."); *see also McFarland v. Bass*, No. M2013-00768-COA-R3-CV, 2014 WL 3002004, at *3 (Tenn. Ct. App. June 30, 2014) (affirming the court's finding that mother's relocation, change in work schedule, and aging of the children did not establish a material change in circumstance even under the lower threshold because they "had little to no effect on the current parenting schedule" and "had no bearing on the best interest of the children").

Finally, Mother takes issue with the court's finding of unclean hands based on her failure to pay child support. According to Mother, "[b]ecause the court found that no material change in circumstances had been proven, it does not follow that a finding of unclean hands was warranted." As such, Mother argues that "any wrongdoing of a party can be considered by the trial court [only] within the context of the best interest analysis." Father argues that the finding of unclean hands was "dicta" and that Mother was not "repelled at the threshold of the court." Rather, Father asserts Mother was provided "a full and complete hearing."

We agree with Father that the unclean hands doctrine does not provide the grounds for denial of the requested modification. And we conclude that any error by the trial court in referencing the doctrine was harmless. *See* Tenn. R. App. P. 36(b). Despite the court's finding, "it did not summarily dismiss the petition or summarily disregard [Mother]'s testimony." *Carter v. State*, 102 S.W.3d 113, 118 (Tenn. Crim. App. 2002). Rather, the court conducted a full hearing in which Father's counsel extensively cross-examined Mother on the allegations she asserted against Father. In fact, Mother's own testimony essentially negated her allegations. The court weighed the proof, made extensive findings, accredited Father's testimony over Mother's, rejected Mother's proof, and ruled on the evidence. *See id.* at 117, 119 (noting that the post-conviction court's

---

[5] Mother makes much of how *her* circumstances and situation changed. As Mother's counsel explained at the conclusion of trial, "we've presented proof here today saying that *the mother is in a much better spot.*" And in her brief on appeal, Mother points to her testimony "regarding *the changes she had made*" over time and argues the court's "decision that Mother was to remain at only 63 days per year *despite showing marked differences* from the time of the entry of the original plan" was "unreasonable." While we congratulate Mother on her improving circumstances, in the context of this proceeding, the focus on Mother was misplaced. *See Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *4 (Tenn. Ct. App. Feb. 28, 2007) (agreeing with the trial court that "the change in Father's deployment status and his impending retirement, which afforded Father a permanent residence, constituted a change in Father's life" but "[t]he mere fact a parent settles down and plans to remain in one location does not necessarily affect the child's well-being in a meaningful way").

statements, which included "the uncorroborated testimony of a petitioner [as to the issues] is insufficient to go forward" and "[t]hose issues should be struck summarily," were "in error," but concluding that the "error did not affect the manner in which the . . . court conducted the hearing or made its findings").

### III.

Father seeks an award of attorney's fees he incurred on appeal on two different grounds. First, Father requests that we award his attorney's fees under Tennessee Code Annotated § 36-5-103(c). Second, Father asserts Mother's appeal is frivolous, and he seeks an award of his fees as damages under Tennessee Code Annotated § 27-1-122.

Tennessee Code Annotated § 36-5-103(c) authorizes an award of attorney's fees "in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties." Tenn. Code Ann. § 36-5-103(c).[6] Awarding fees incurred on appeal is a matter of discretion. *See Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). We consider the following factors in deciding whether to award fees: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). Considering these factors, we decline to award Father his attorney's fees incurred on appeal on this basis.

Father also asserts Mother's appeal was frivolous. *See* Tenn. Code Ann. § 27-1-122 (2017). The statute authorizing an award of damages for a frivolous appeal "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122). A frivolous appeal is one "utterly devoid of merit." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). We do not find this appeal devoid of merit or any indication that it was undertaken for delay. Thus, we also decline to award Father his fees under this statute.

### IV.

Based on the foregoing, we affirm the trial court's judgment. We decline Father's request for attorney's fees incurred on appeal.

---

[6] This statutory provision was recently amended effective July 1, 2018. 2018-2 Tenn. Code Ann. Adv. Legis. Serv. 236. Because this case was filed and argued before the effective date, we have applied the pre-amendment version.

_____
W. NEAL MᴄBRAYER, JUDGE