IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 4, 2021

## STATE EX REL. TYNESHA APRIL DIOR MOODY v. DAMOND JULIAN ROKER

**Appeal from the Juvenile Court for Shelby County
No. CC4940  Dan H. Michael, Judge[1]**

_____

**No. W2019-01464-COA-R3-JV**

_____

Mother filed a petition under the Uniform Interstate Family Support Act, seeking establishment of paternity and a child support order against Father, who is incarcerated. The State of Tennessee is acting on Mother's behalf, and Father is acting pro se. Father filed multiple pretrial motions in the trial court, which the trial court did not rule on before the trial on Mother's petition. Additionally, the trial court's order fails to comply with Rule 52.01 of the Tennessee Rules of Civil Procedure and is apparently not based on any properly admitted evidence. Therefore, we vacate the trial court's order and remand for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

Damond Julian Roker, Tiptonville, Tennessee, Pro se.

Herbert H. Slatery, III, Attorney General and Reporter; Matt D. Cloutier, Assistant Attorney General, for the appellee, State of Tennessee, Department of Human Services and Tynesha April Dior Moody.

### OPINION

### FACTUAL AND PROCEDURAL HISTORY

---

[1] A juvenile court magistrate made the findings and recommendations in this case, which Judge Michael then adopted, ratified, and confirmed.

In this child support and parentage case, the State of Tennessee ("Appellee") is acting on behalf of Tynesha April Dior Moody ("Mother"), via the Division of Child Support Services for the Tennessee Department of Human Services and the Attorney General of Tennessee, and pursuant to Title IV-D of the Social Security Act, 42. U.S.C. § 651.[2] *See also* Tenn. Code Ann. § 36-5-1101(8).[3] The father of the child at issue, Damond Julian Roker ("Father") is proceeding pro se. Mother filed a Uniform Support Petition (the "UIFSA petition") under the Uniform Interstate Family Support Act ("UIFSA"), Tenn. Code Ann. § 36-5-2001, *et seq*. In her petition, Mother sought establishment of paternity and an order for current and retroactive child support against Father with respect to the child at issue, born in September 2009. At the time Mother filed the petition, the child was living with Mother in Georgia, and Father was incarcerated in Tennessee.[4] The UIFSA petition was adjudicated in the Juvenile Court of Shelby County ("the trial court").

In the petition, Mother alleged that Father had not provided support for the child since 2010. Attached to the petition was an Affidavit in Support of Establishing Paternity, which alleged, among other things, that Father admitted he was the child's father, acted and presented himself as the father, sent cards/letters regarding the pregnancy and/or the child, offered to pay abortion and medical expenses, paid for birth-related expenses, did not claim the child on tax returns, has provided food, clothing, gifts, or financial support for the child, and visited with the child. Father took a DNA test in 2018, which established a 99.9999% probability that he is the child's father. Father also expressly acknowledges that he is the child's father.

Father filed many motions in the trial court: multiple motions for appointment of counsel; a motion for a hearing to be set to determine support owed and credit for retroactive support and medical expenses Father already paid and time he already spent with the child;[5] a "slow pay" motion seeking permission to pay the clerk of the trial court $10.00 per month and for all further writs of execution or writs of garnishment to be stayed, pending such payments; a motion for a continuance; a motion for transport to appear in the UIFSA proceedings and notice of intent to appear in court ("the motion to participate"); and a motion for determination of the status of the case. In the motion to participate, which was filed on March 12, 2019, Father sought a court order for him to be transported to the trial court from prison to appear in the proceedings in this case, and expressly invoked any rights he had to appear in court. In the motion for determination of the status of the case,

---

[2] We will refer to the State of Tennessee throughout as "Appellee," and intend this to cover both the Attorney General, who is participating in this appeal on Mother's behalf, and the "IV-D Staff Attorney" at the Shelby County Child Support Office, who represented Mother at the trial level.

[3] Appellee cites Tennessee Code Annotated section 36-6-1101. No such code provision exists. Therefore, we assume the intended reference was to section 36-5-1101(8).

[4] According to Father, he has been incarcerated since 2016. It appears that he has remained incarcerated throughout the proceedings in this case.

[5] In this same document, Father also acknowledged his paternity and requested that the child's surname be changed to his.

filed on April 24, 2019, Father stated that this action was filed in the trial court on or about January 19, 2019, that Appellee was duly served on or about January 21, 2019, and that the case had been pending before the trial court for approximately sixty days without the court clerk setting it upon the docket to be heard.[6] On March 14, 2019, two days after Father filed his motion to participate, Appellee filed a motion for judgment by default in the trial court, arguing that Father was properly served with Mother's UIFSA petition and failed to answer or appear as required by the Tennessee Rules of Civil Procedure, and requesting that the trial court proceed with a hearing on the UIFSA petition.

After this case was continued twice in early 2019, a bench trial occurred before a judicial magistrate in the trial court on June 19, 2019. Only counsel for Appellee (the IV-D Staff Attorney) was present. There is no transcript of this hearing in the record, and no statement of the evidence that was actually presented.[7] On June 19, 2019, the magistrate made his written findings and recommendations, and the juvenile court judge adopted, ratified, and confirmed them as the order of the trial court. That order was filed on July 9, 2019. In that order, the magistrate ruled on Mother's UIFSA petition, Appellee's motion for default judgment, and most of Father's motions, without directly addressing all of the issues Father had raised and the relief he had sought. Of Father's motions and requests that the trial court specifically addressed in its written order, it denied most, including the motion to determine the status of the case, on the basis that it sought relief that could not be granted and because "[t]his matter was set for hearing on June 19, 2019, and the Court never set a status hearing." The trial court also denied Father's motion to participate, with no explanation. As to Appellee's motion for default judgment, the trial court treated one of Father's filings, which included multiple motions, including his motion for a continuance, as an answer to the UIFSA petition, reasoning that it "ma[de] several factual allegations, and in some ways answer[ed] the Petition to Set Support." Thus, the trial court found that it was "not appropriate to enter a default judgment against [Father]," and denied Appellee's motion. The trial court went on, however, to make further findings and recommendations "based on the proof and testimony and evidence presented at the hearing," including granting Mother's UIFSA petition and ordering the following:

1. Father was to pay all medical expenses incident to the child's birth and $316.00 per month in child support, beginning July 1, 2019.

2. Retroactive child support was ordered in the amount of $20,856.00, calculated as of the date of the hearing and covering a period of sixty-six months. The trial court acknowledged that Father sought credit for $12,800.00 in previous child support payments, but stated that because Father bore the burden of proving that he already

---

[6] It is unclear what action Father is referring to as having taken place on or about January 19, 2019, and on January 21, 2019, especially because many of the filing dates in the record are illegible.

[7] There is a document in the record titled "Statement of the Evidence," but it contains argument, not evidence, as will be discussed *infra*.

paid that amount by supporting documentation, and because no such documentation was provided,[8] his balance of retroactive support owed would not be offset by credits.

3.  The retroactive support was to be paid by income assignment at a rate of $25.00 per month, starting on July 1, 2019, to the Central Child Support Receipting Unit in Nashville.

4.  Both parties were to provide medical insurance for the child, if available at a reasonable cost, and are responsible for equally splitting the child's necessary expenses related to medical care that are not covered by insurance.

5.  Father was to make child support payments directly to the same office where his retroactive payments would be sent, "until the employer begins deducting payments and at any time that the full amount of [Father's] child support obligation is not being withheld by income assignment."

6.  The child's surname would remain as the Mother's, because neither party appeared.

7.  Father was to reimburse the state for the cost of the state-ordered DNA test, in the amount of $34.41.

8.  Father was to pay $15.00, an amount equal to the fee for processing a new birth certificate.

9.  Father was to pay the costs, for which execution may issue.

The trial court also found that the Child Support and Credit Worksheets appeared to be correct and should be admitted in evidence and incorporated by reference in its findings.

The procedural history of this appeal after the trial court's written order was filed is rather protracted, and we need not tax the length of this opinion by reviewing it in detail. Of note, this Court granted Father's motion to proceed as indigent.[9] However, this Court denied Father's motion for the appointment of counsel and his motion to require the state to file a transcript of the June 19, 2019 trial in the appellate record and provide him with a copy.

## ISSUES PRESENTED

---

[8] Father contests this, asserting that while he was in custody at the Shelby County Jail, he mailed such supporting documents to the Shelby County Child Support Office, well in advance of the trial.

[9] We also note that some of Father's filings in the record state that he sought a request for a rehearing at the trial level, pursuant to Tennessee Code Annotated section 36-5-405(h). However, it is unclear from the record if he did in fact request a rehearing. But given that neither party mentions a rehearing in its appellate brief, we will not inquire into this issue further.

The parties essentially raise the same issues, which we slightly restate as follows.[10]

I.      Whether the trial court had subject matter jurisdiction over the action to establish parentage and child support under UIFSA.

II.     Whether the trial court had personal jurisdiction over the parties in the UIFSA action.

III.    Whether the state of Georgia was required to be joined as a party in the trial court proceedings.

IV.     Whether the trial court erred in failing to credit Father for the financial contributions he previously made toward the care and support of the child and the time he previously spent with the child.

V.      Whether the trial court erred in calculating the amount of child support owed, including ordering retroactive support for a period of more than five years without showing good cause.

VI.     Whether the trial court erred by failing to make the findings required under Rule 52.01 of the Tennessee Rules of Civil Procedure.

## DISCUSSION

We begin by noting that Father has acted pro se throughout the entirety of this case, while he has also been imprisoned. "While entitled to fair and equal treatment before the courts, a pro se litigant is still required to comply with substantive and procedural law as do parties represented by counsel." ***Gilliam v. Gilliam***, No. M2007-02507-COA-R3-CV, 2008 WL 4922512, at *3 (Tenn. Ct. App. Nov. 13, 2008) (citing ***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). As explained by this Court, "[t]he courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." ***Jackson v. Lanphere***, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting ***Hessmer***, 138 S.W.3d at 903 (internal citations omitted)). "[A]lthough this Court gives pro se litigants a certain amount of leeway in their filings, . . . we have ruled that this leeway is generally reserved for those 'untrained in the law.'"

---

[10] Father filed both an original appellate brief and a "supplemental" appellate brief, which was filed three days after the original brief. They are effectively the same, except that the supplemental brief contains an attachment that is not otherwise in the record. We are unable to consider such attachments to briefs. *See* ***Forrest v. Rees***, No. 01C01-9411-CC-00387, 1996 WL 571765, at *3 (Tenn. Crim. App. Oct. 8, 1996) (stating that "attachments to briefs are not evidence and will not be considered by the appellate courts").

*Masserano v. Masserano*, No. W2018-01592-COA-R3-CV, 2019 WL 2207476, at *5, 5 n.11 (Tenn. Ct. App. May 22, 2019) (quoting *Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016) (citing *Hessmer*, 138 S.W.3d at 903)). We keep these principles in mind in adjudicating this appeal.

## I.        Subject Matter Jurisdiction

We will first address the threshold issue of subject matter jurisdiction. *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012) (citations and quotation marks omitted) ("Challenges to a court's subject matter jurisdiction call into question the court's lawful authority to adjudicate a controversy brought before it, and, therefore, should be viewed as a threshold inquiry."). "A challenge to subject matter jurisdiction cannot be waived and may be raised at any time." *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 157 (Tenn. 2017) (citations omitted). "Whenever subject matter jurisdiction is challenged, the burden is on the plaintiff to demonstrate that the court has jurisdiction to adjudicate the claim." *Redwing*, 363 S.W.3d at 445 (citations omitted). "The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citing Tenn. R. Civ. P. 12.08). "Subject matter jurisdiction depends on the nature of the cause of action and the relief sought . . . and can only be conferred on a court by the constitution or a legislative act." *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012) (internal citations omitted). The question of whether a court possesses subject matter jurisdiction is an issue of law, which we review de novo. *Id.* at 712–13.

Father argues that under UIFSA, Tennessee courts have subject matter jurisdiction to recognize and enforce child support orders, judgments, and decrees from other states or jurisdictions. Thus, he argues that because Mother did not first bring her UIFSA action in Georgia, and, as such, there is no judgment or order from a Georgia court, her action is not enforceable in Tennessee. Father is not wrong, in that, "[i]n cases where one of the parents and/or a child is domiciled outside of this state, the provisions of [UIFSA] come into play. The establishment, enforcement, or modification of support orders across state lines is governed by UIFSA." *State ex rel. Irwin v. Mabalot*, No. M2004-00614-COA-R3-CV, 2005 WL 3416293, at *3 (Tenn. Ct. App. Dec. 13, 2005) (citation omitted). However, UIFSA does not only empower Tennessee courts to enforce and modify existing child support orders from other states. It also allows Tennessee courts to establish child support-related orders. *See id.* ("Tennessee Code Annotated § 36-5-2401 authorizes a Tennessee court to order a parent residing in this state to pay for the support of a child who lives in another state, if no such order has been issued in that other state.").[11]

---

[11] Although section 36-5-2401 has changed since 2005, this principle is unaffected, as discussed *infra*.

- 6 -

Appellee argues that the trial court had subject matter jurisdiction because "[t]he chancery, circuit, juvenile, and any courts exercising domestic relations jurisdiction . . . are the tribunals of this state," Tenn. Code Ann. § 36-5-2102(a), and a petitioner can file "directly in a tribunal of another state . . . which has or can obtain personal jurisdiction over the respondent[.]" Tenn. Code Ann. § 36-5-2301(b). According to Appellee's reasoning, then, Tennessee must be "another state," as referenced in section 36-5-2301(b), and Mother, as a resident of Georgia, was therefore allowed to file her petition in a Tennessee tribunal, as long as that tribunal has personal jurisdiction over Father. Appellee also relies on section 36-5-2401(a)(1), which states, "If a support order entitled to recognition under parts 20-29 of this chapter has not been issued, a responding tribunal of this state with personal jurisdiction over the parties may issue a support order if . . . [t]he individual seeking the order resides outside this state . . . ."[12] While the use of the term "responding tribunal" does suggest some type of two-state proceeding, the definition of that term reveals otherwise. Specifically, the term "[r]esponding tribunal" is defined as "the authorized tribunal in a responding state or foreign country," Tenn. Code Ann. § 36-5-2101(24), and "responding state" is defined as "a state in which a petition or comparable pleading for support or to determine parentage of a child is filed or to which a petition or comparable pleading is forwarded for filing from another state or a foreign country," Tenn. Code Ann. § 36-5-2101(23). Thus, a responding tribunal is simply a tribunal in a state either where a child support petition is filed *or* where a petition is forwarded. Indeed, this understanding tracks the language of section 36-5-2301(b), which expressly allows a party to file a petition "directly in . . . another state," without the need for forwarding of the petition from the petitioner's home state.

Here, no prior child support order had previously been entered with respect to the

---

[12] Under UIFSA, "initiating tribunal" is defined as "the tribunal of a state or foreign country from which a petition or comparable pleading is forwarded or in which a petition or comparable pleading is filed for forwarding to another state or foreign country." Tenn. Code Ann. § 36-5-2101(11).

We note that Mother's UIFSA petition, which bears a filing date of June 12, 2017, was notarized in Georgia and signed by an "Agent" of "Carrollton DCSS" (which we assume is some sort of department of children's services in Carrollton, Georgia). However, it is not marked as specifically filed in the trial court. The record also contains documentation indicating that the "initiating jurisdiction" in this case is Georgia and the "responding jurisdiction" is Tennessee. Nevertheless, Appellee asserts that Mother filed her UIFSA petition directly in the trial court, which is the "responding tribunal," as opposed to in an "initiating tribunal to be forwarded to a responding tribunal." *See* Tenn. Code Ann. § 36-5-2301 cmt.

Indeed, "[u]nder UIFSA, a tribunal may serve as a responding tribunal even when there is no initiating tribunal. This accommodates the direct filing of a proceeding in a responding tribunal by a nonresident of the forum, whether residing in a state or anywhere else in the world." Tenn. Code Ann. § 36-5-2203 cmt. Therefore, while it is unclear from the record where and when Mother's UIFSA petition was actually filed, we will assume it was directly filed in the trial court for purposes of this opinion, given Appellee's assertion that it was and that Father does not seem to dispute this. Furthermore, while our disposition of this case does not require us to address the fifth issue Father raises—whether Tennessee Code Annotated section 36-2-311(G)(i) limits the award of retroactive child support to a period of five years—we note that the date on which Mother's petition was filed in the trial court would appear to be relevant to that issue.

child. As such, the trial court, as a responding tribunal of Tennessee, was within its powers to issue a support order as long as it had personal jurisdiction over the parties. *See* Tenn. Code Ann. § 36-5-2401(a)(1). The same is true of the parentage portion of this action. *See* Tenn. Code Ann. § 36-5-2402 ("A tribunal of this state authorized to determine parentage of a child may serve as a responding tribunal in a proceeding to determine parentage of a child brought under parts 20-29 of this chapter or a law or procedure substantially similar to parts 20-29 of this chapter."); *see also* Tenn. Code Ann. § 36-2-307 (giving juvenile courts subject matter jurisdiction over paternity actions). We consequently conclude that the juvenile courts of Tennessee had subject matter jurisdiction under UIFSA to adjudicate Mother's petition for child support and to establish parentage, so long as Tennessee had personal jurisdiction over the parties.[13] We therefore proceed to discuss that issue.

## II.      Personal Jurisdiction

Next, Father argues that the trial court did not have personal jurisdiction over Mother. Father seems to conflate this argument with another argument, that the State of Georgia is the proper, or true, petitioner/party in interest here (and he also raises, as a distinct issue, whether Georgia was required to be joined as a party). Father asserts that Tennessee has no true interest in the case, because Mother and the child do not reside in Tennessee, nor do they receive any benefits from Tennessee. That may be true, but our resolution of this case does not necessitate that we explore that argument or decide if Georgia is a necessary party. Rather, we will confine our analysis of this issue to deciding whether the trial court lacked personal jurisdiction over the parties.

---

[13] It is arguable, however, whether Mother even needed to resort to UIFSA, because Father is a resident of the state of Tennessee. *See* Tenn. Code Ann. § 36-5-2201 cmt. ("In situations in which the long-arm statute can be satisfied, the petitioner (either the obligor or the obligee) has two options: (1) utilize the long-arm statute to obtain personal jurisdiction over the respondent, or, (2) initiate a two-state proceeding under the succeeding provisions of UIFSA seeking to establish a support order in the respondent's state of residence. Of course, a third option is also available that does not implicate UIFSA; a petitioner may initiate a proceeding in the respondent's state of residence by filing a proceeding to settle all issues between the parties in a single proceeding."); ***State ex rel. Schrita O. v. Robert T.***, No. W2017-00073-COA-R3-JV, 2017 WL 5501345, at \*3 (Tenn. Ct. App. Nov. 16, 2017) ("Juvenile courts have jurisdiction to establish paternity of a child when the putative Father resides in Tennessee. *See* Tenn. Code Ann. § 36-2-307. . . . Once a court has established paternity, the court must enter an initial child support order, including an award of retroactive child support if applicable. Tenn. Code Ann. § 36-2-311(a)(11)(A)."); ***Torrico v. Smithson***, No. M2004-01924-COA-R3-JV, 2006 WL 334032, at \*4 (Tenn. Ct. App. Feb. 13, 2006) ("The dispositive question on the jurisdictional issue is whether Tenn. Code Ann. § 36-2-311(a)(11) [a parentage statute] confers subject matter jurisdiction on the Juvenile Court to enter a child support order when Mother and child are Bolivian residents. After considering all pertinent factors, we conclude, under the particular facts presented in this case, that the Juvenile Court did have subject matter jurisdiction to enter a child support order. There is no serious dispute but that the Juvenile Court had in personam jurisdiction over Father as a Tennessee resident. The language of Tenn. Code Ann. §§ 36-2-307 and 36-2-311(a)(11) reflects the Tennessee Legislature's clear intent to confer subject matter jurisdiction on the Juvenile Court over child support in such a paternity case as is now before us.").

- 8 -

Appellee argues that Father waived this issue by raising it for the first time on appeal. Regardless of whether Father waived this argument,[14] it fails because the trial court had personal jurisdiction over each party. The trial court has personal jurisdiction over Father because Father undisputedly resides in Tennessee. *See Torrico*, 2006 WL 334032, at *4 ("There is no serious dispute but that the Juvenile Court had in personam jurisdiction over Father as a Tennessee resident."). Mother certainly submitted herself to the personal jurisdiction of the trial court by filing her UIFSA petition there. Tenn. Code Ann. § 36-5-2301 cmt. ("It is also axiomatic that an individual petitioner requesting affirmative relief under this act submits to the personal jurisdiction of the tribunal."); *see Torrico*, 2006 WL 334032, at *2, 4 ("Mother certainly has submitted herself to the personal jurisdiction of the Juvenile Court [by filing a paternity action there]."). Thus, despite Father's insistence that Georgia had a greater interest in this matter, because Tennessee courts could exercise personal jurisdiction over the parties, UIFSA clearly provides that Tennessee juvenile courts had subject matter jurisdiction to adjudicate this matter, as discussed *supra*. Therefore, we will proceed to address the remaining outcome determinative issues.

### III. Substantive Matters

Father next takes issue with several of the decisions made by the trial court in the final trial on this matter. In particular, Father asserts that the trial court erred in failing to give him credit for moneys previously paid and time previously spent with the child, in its determination of child support, and in failing to make appropriate findings of fact and conclusions of law to support its ruling. As a procedural matter, he also argues that Georgia was a necessary party to this case. In contrast, Appellee asserts that Georgia was not a necessary party, and that the trial court's ruling is both sufficient and correct.

We begin with the sufficiency of the trial court's order. Rule 52.01 of the Tennessee Rules of Civil Procedure provides as follows:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).[15]

---

[14] We note that, as discussed *supra*, subject matter jurisdiction under the UIFSA has a personal jurisdiction component. As such, and given that this argument is easily disposed of, we exercise our discretion to consider this argument despite Father's purported waiver.

[15] Rule 101(c)(3)(B) of the Tennessee Rules of Juvenile Practice and Procedure states that the Tennessee Rules of Civil Procedure apply in parentage cases under Tennessee Code Annotated section 36-2-301, *et seq*. While this is a parentage action under a different statute (UIFSA), as explained above, such

Thus, "[i]n bench trials, trial courts must make findings of fact and conclusions of law to support their rulings." ***Hardin v. Hardin***, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *3 (Tenn. Ct. App. Dec. 27, 2012). "Simply stating the trial court's decision, without more, does not fulfill [the Rule 52.01] mandate." ***Cain-Swope v. Swope***, 523 S.W.3d 79, 86 (Tenn. Ct. App. 2016) (citations and quotation marks omitted). While there is no bright-line rule for the adequacy of a trial court's order, "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." ***Lovlace v. Copley***, 418 S.W.3d 1, 35 (Tenn. 2013). Even "'a lengthy summary of the testimony adduced at the hearing and a few credibility observations' without further indicating which testimony or other evidence the trial court relied upon in making its decision is not sufficient to satisfy the requirement of making specific findings of fact." ***Rosebrough v. Caldwell***, No. W2018-01168-COA-R3-CV, 2019 WL 6898218, at *4 (Tenn. Ct. App. Dec. 18, 2019) (quoting ***In re S.S.-G.***, No. M2015-00055-COA-R3-PT, 2015 WL 7259499, at *12 (Tenn. Ct. App. Nov. 16, 2015)). A trial "'court must go beyond mere summation by linking the evidence to its clearly stated findings of fact and conclusions of law.'" ***Id.*** A trial court's order should "provide which evidence the Trial Court relied on when making its decision" and explain "how it came to its conclusion." *See id.* Generally, the proper remedy when the trial court fails to make sufficient findings of fact and conclusions of law is to vacate and remand for the entry of a more detailed order. ***Lake v. Haynes***, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011).

Father is correct that the trial court's order is deficient. Indeed, it contains very little that could even be characterized as factual findings. Instead, the trial court merely states its rulings as to Father's obligations. For example, there are no findings as to either party's income or that in any way explain what proof was presented on this issue. Perhaps this is because neither Mother nor Father was present for the trial. In fact, according to the trial court's final order, the only person present at trial was the IV-D Staff Attorney. And yet, the trial court's final order indicates that it "considered the evidence, and [] proof introduced" in making its ruling. Respectfully, in the absence of testimony from either Mother or Father or findings of fact that indicate that testimony was adduced from a single other witness, we are perplexed as to what evidence was actually presented at this trial.[16]

In similar cases, this Court has explained that a trial court may not rule upon evidence that is not properly introduced and admitted in the record. For example, in ***Dayhoff v. Cathey***, No. W2011-02498-COA-R3-JV, 2012 WL 5378090 (Tenn. Ct. App.

---

actions can proceed in tribunals that already have jurisdiction over parentage actions in Tennessee, including juvenile courts. *See* Tenn. Code Ann. §§ 36-2-307, 36-5-2402. Furthermore, Appellee concedes that the Tennessee Rules of Civil Procedure are applicable to this case.

[16] There is no proper statement of the evidence in this case that could resolve this doubt. We discuss the absence of a statement of the evidence in the record in detail, *infra*.

Nov. 1, 2012), a juvenile court set a pro se father's child support obligation after conducting a hearing without sworn testimony, stipulations, or properly introduced and admitted documentary evidence. We held that the juvenile court's judgment was vacated because "no evidence was properly submitted." *Id.* at *3. We explained:

> [N]o testimony was elicited from the parties or any other witnesses, but [] all evidence was introduced through argument and offers of proof to the trial judge.
>
> * * *
>
> In this case, as there was neither testimonial evidence nor stipulations, the documents included in the record were not properly introduced. *See Brooks* [*v. Brooks*, No. 01A01-9607-CV-00312], 1997 WL 83664, at *2 [(Tenn. Ct. App. Feb. 26, 1997)] (remanding the case because there were no "exhibits introduced by virtue of sworn testimony or stipulation of the parties"). Without testimonial evidence, stipulations, or properly introduced documentary evidence, there is no evidence from which the trial court could have made its ruling in this case. There are serious disputes regarding the facts, including the amount of time Father spent with the child prior to the proceeding, the parents' incomes, payments toward child support allegedly made by Father, and the legitimacy of the medical expenses submitted by Mother. Because no evidence was properly submitted on any of the issues on appeal, we must vacate the judgment of the trial court . . . .

*Id.* at *2–3; *see also In re D.M.H.*, No. W2006-00270-COA-R3-JV, 2006 WL 3216306, at *7 (Tenn. Ct. App. Nov. 8, 2006) (some citations omitted) ("Allegations in the pleadings are not evidence of the facts averred. *Hillhaven Corp. v. State ex rel. Manor Care, Inc.*, 565 S.W.2d 210, 212 (Tenn. 1978). 'Unless such facts are admitted or stipulated, they must be proved by documents, affidavits, oral testimony or other competent evidence.' *Id.* Furthermore, 'mere statements of counsel are not evidence or a substitute for testimony.' *Metro. Gov't of Nashville & Davidson Co. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977).").

As previously noted, it does not appear that sworn testimony was presented in this case. However, the trial court does appear to rely on an exhibit in its final judgment, stating that "the Child Support and Credit Worksheets appear to be correct and should be admitted into evidence as Collective Exhibit A . . . ." As previously discussed, however, exhibits are not properly entered unless stipulated to or "introduced by virtue of sworn testimony[.]" *Dayhoff*, 2012 WL 5378090, at *3 (quoting *Brooks*, 1997 WL 83664, at *2). In this case,

as there was neither testimonial evidence nor stipulations, this document was not properly introduced. *See also* Tenn. R. Evid. 901 (detailing the requirement of authentication).[17]

Thus, in addition to the trial court's outward failure to comply with Rule 52.01, a deeper review of the trial court proceedings creates significant doubt that any evidence was properly submitted in this case. Without testimonial evidence, stipulations, or properly introduced documentary evidence, there is no evidence from which the trial court could have made its ruling in this case. As such, the decision must be vacated and remanded for a new trial in which evidence is properly presented.

Because we are remanding this case for a new trial, we find it necessary to also address another serious deficiency in this case. In particular, the trial court's final order denied, for the first time, all of Father's pre-trial motions, except for Father's motion to continue, which was not specifically ruled upon at all. And with regard to Father's motion to participate at trial, the trial court's ruling gave absolutely no basis for the denial. This Court has repeatedly held, however, that a trial court must address pre-trial motions *prior to trial*, particularly in the context of a motion that would allow an incarcerated party to participate in the case. For example, in ***Knight v. Knight***, 11 S.W.3d 898 (Tenn. Ct. App. 1999), the wife of an incarcerated husband filed for divorce, alleging various grounds. The husband, acting pro se, then filed a motion requesting that he be transported to the final hearing or, alternatively, that the proceeding be held in abeyance until his release from prison. *Id.* at 899. The trial court ignored the husband's requests, and instead conducted a trial on the matter without entering a ruling on the pending motion. *Id.* After the trial court granted the wife's complaint for a divorce, the husband appealed. *Id.* This Court concluded that although the trial court was not required to issue a directive mandating husband's transport to the hearing, the divorce decree should be vacated due to the trial court's failure to address husband's pending motion. *Id.* at 906–07.

We explained the need for such a rule in a later wrongful death case, ***Bell v. Todd***, 206 S.W.3d 86 (Tenn. Ct. App. 2005). In ***Bell***, the trial court did not rule on a pro se, incarcerated defendant's pending motions to set aside a default judgment, to hold the plaintiffs' claim against him in abeyance until his criminal trial ended, and to release his

---

[17] We note that the Tennessee Child Support Guidelines in effect at the time that this case was initiated did provide certain figures to be used for imputing income when no reliable evidence was presented. The child support worksheet and resulting order did not utilize these figures, however, which would have calculated support based on "annual gross income of [$37,589] for male parents and [$29,300] for female parents." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(iv)(I)(III) (2008). Instead, the Child Support Worksheet and the trial court's resulting support order set Mother's and Father's monthly gross incomes at $1,257.00 each, which comes out to $15,084 each, annually. The State asserts that the trial court's decision was "presumably" based on the Child Support Worksheet and the federal minimum wage. In support, the State cites at least one memorandum opinion, which may not be cited. In any event, in order for the trial court to depart from the figures provided by the Child Support Guidelines, it does appear that some type of admissible evidence was required that could reliably show either party's income. As discussed above, nothing in the record indicates that evidence of any kind was presented.

funds so he could retain representation, before conducting a trial on the issue of damages. *Id.* at 92. On appeal, this Court explained:

> Litigation involving self-represented litigants can be challenging and difficult. *Irvin v. City of Clarksville*, 767 S.W.2d 649, 651 (Tenn. Ct. App. 1988). It can become even more difficult and cumbersome when the self-represented litigant is incarcerated. *Chastain v. Chastain*, No. M2003-02016-COA-R3-CV, 2004 WL 725277, at *2 (Tenn. Ct. App. Mar. 22, 2004) (No Tenn. R. App. P. 11 application filed). However, an incarcerated litigant's right to meaningful access to the courts requires that the litigant be afforded a fair opportunity to present his or her side of the controversy. *Knight v. Knight*, 11 S.W.3d 898, 903 (Tenn. Ct. App. 1999). . . .
>
> Appellate courts frequently have been confronted with cases in which the trial courts have disposed of claims either filed by or asserted against self-represented prisoners without first addressing the prisoner's pending motions. No matter whether the prisoner is the plaintiff or the defendant, reviewing courts have consistently held that trial courts err when they proceed to adjudicate the merits of the claim without *first* addressing the prisoner's pending motion or motions. These oversights have generally been found to be prejudicial rather than harmless because the failure to address pending motions "give[s] the impression that a litigant is being ignored," *Logan v. Winstead*, 23 S.W.3d [297,] 303 [Tenn. 2000]. We have also held that a prisoner's failure to comply with local rules requiring motions to be set for hearing does not provide a trial court with an excuse for failing to address the pending motions. *Chastain v. Chastain*, 2004 WL 725277, at *2. Accordingly, when a trial court has failed to rule on an incarcerated litigant's pending motions, reviewing courts have consistently vacated the judgment and remanded the case to the trial court with directions to consider and act on the pending motions.

*Bell*, 206 S.W.3d at 91 (emphasis added) (footnote omitted) (collecting cases). We then held that the trial court's failure to rule on the defendant's motions constituted "plain error." *Id.* at 92. "Accordingly, we vacate[d] the judgment awarding . . . damages against [the defendant] and remand[ed] the case to the trial court with directions to consider and dispose of each of [the defendant's] motions using the legal standards applicable to each of these motions and to enter an order specifying its reasons for either granting or denying each motion." *Id.* (citing *Winstead*, 23 S.W.3d at 303); *see also Richards v. Richards*, No. E2014-02123-COA-R3-CV, 2015 WL 4575536, at *1 (Tenn. Ct. App. July 30, 2015) (concluding that the trial court committed prejudicial error by dismissing the pro se, incarcerated husband's complaint for divorce without first considering his motion to participate via video communication technology); *Reese v. Klocko*, M2005-02600-COA-R3-CV, 2007 WL 1452688, at *1, 5 (Tenn. Ct. App. May 16, 2007) (vacating the trial

court's divorce decree after it never ruled on the incarcerated, pro se husband's motion to participate in the divorce trial by telephone, stating not only that the husband's motion "should have been considered by the [t]rial [c]ourt," but also that "it should have been granted," and remanding for a new trial with directions that the husband be allowed to participate in the trial via telephone); *Chastain v. Chastain*, No. M2003-02016-COA-R3-CV, 2004 WL 725277, at *2 (Tenn. Ct. App. Mar. 31, 2004) (citing *Marion v. Bowling*, No. 03A01-9906-CV-00229, 1999 WL 1059670, at *4 (Tenn. Ct. App. Nov. 22, 1999) (Franks, J., dissenting)) (vacating the portions of the trial court's final decree of divorce addressing the division of the parties' marital estate because the trial court failed to rule on the pro se, incarcerated husband's discovery motions before the final hearing, and stating that "[t]he courts should not ignore motions of substance and proceed as if they had not been filed"); *Cherry v. Cherry*, No. 89-302-II, 1989 WL 155362, at *5 (Tenn. Ct. App. Dec. 20, 1989) (vacating the final decree of divorce and remanding for further proceedings where the trial court entered the final decree without specifically ruling on the pro se, incarcerated defendant's request to appear in person at the hearing or defendant's subsequent motion to continue the trial).

Here, although the trial court did eventually deny most of Father's pre-trial motions, it do so only after the final hearing on this matter. In our view, a trial court's denial of pre-trial motions following the final hearing in which the incarcerated litigant was not able to participate is functionally equivalent to a failure to rule on the motions at all, as Father had no notice that his motions were denied until after the trial. As the authorities above demonstrate, the trial court's failure to adequately address Father's pre-trial motions prior to trial was reversible error. *See, e.g.*, *Bell*, 206 S.W.3d at 91.

Of course, we must concede that this issue was not specifically designated as an issue by Father in his brief, nor was it briefed in a proper manner. In addition to the fact that this case must be vacated simply on the bases of the trial court's failure to comply with Rule 52.01 and to have an evidentiary hearing, we have also ruled on multiple occasions that this is the type of issue that should be addressed by this Court even when it was not properly raised. For example, in *Bell*, this Court considered the issue of the trial court's failure to rule on the defendant's pretrial motions even though it had not been explicitly raised by the parties. We explained that "appellate courts may, on their own motion, consider issues not explicitly raised by the parties in order to prevent injury to the public's interest or prejudice to the judicial process," and, in that case, "fairness and justice require[d]" us to do so. *Id.* at 91 (citing Tenn. R. App. P. 13(d); *State v. Goodman*, 90 S.W.3d 557, 562 n. 3 (Tenn. 2002); *Panzer v. King*, 743 S.W.2d 612, 616 (Tenn. 1988), *abrogated on other grounds by Lacy v. Cox*, 152 S.W.3d 480 (Tenn. 2004)). Similarly, in *Gilliam*, a divorce case, an incarcerated, pro se defendant filed multiple motions before the hearing on the divorce petition occurred, which he did not attend. 2008 WL 4922512, at *2, 3. The defendant appealed the trial court's ruling, but did not expressly raise the trial court's failure to rule on his pre-trial motions. We nevertheless chose to address that issue, explaining that

[a]ppellate courts may consider issues not explicitly raised by the parties "in order to prevent injury to the public's interest or prejudice to the judicial process." ***Bell***, 206 S.W.3d at 91. We have determined that we must address an issue not expressly raised by Husband in his brief. As set forth in our summary of the procedural background in this case, Husband's pleadings include at least three pre-trial motions: a motion for extension of time or postponement of proceedings, a motion to quash (essentially, a motion to dismiss) for lack of personal jurisdiction, and a motion for summary judgment. The record does not indicate that these pending motions were ever addressed by the trial court *prior to* the final divorce hearing.

*Id.* at *3 (footnote omitted) (emphasis added).

We conclude that the same interests are at play in this case and require that we vacate the trial court's ruling and remand for a new trial. While some of Father's motions may have been rendered moot by the time of the final hearing or were entirely without merit,[18] at the very least, Father's motion to participate at trial required pre-trial adjudication.[19] And the trial court also failed to address, until trial, Father's motion for a

---

[18] Of the motions Father filed before trial, one of them, the slow play motion, involved an issue that was likely to be decided at trial (i.e., how much money he would be ordered to pay to the court, and on what schedule), and thus probably did not require pre-trial action. We also view the trial court's failure to rule on Father's pre-trial motions for appointment of counsel as harmless, because Father was not entitled to counsel. *See **Bell***, 206 S.W.3d at 92 (citations omitted) ("With the exception of certain proceedings involving the termination of parental rights, it is now well-settled that there is no absolute right to counsel in a civil trial."); *see also* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). As for the motion for a hearing to determine various issues, a hearing did occur in this case, but no evidence was presented at that hearing, nor was Father allowed to participate. This issue will likely be cured by our remand for a new trial.

[19] The same may be true of Father's motion to continue. However, the continued viability of Father's motion to continue is somewhat unclear. The filing date on Father's motion for a continuance is illegible, but it immediately follows the trial court's second order continuing the case in the appellate record. Thus, we assume the record is in chronological order and that the motion for a continuance was filed subsequent to the second order continuing the case. Furthermore, neither of the trial court's orders continuing the case mentions Father's motion for a continuance, nor do any of the trial court's other orders in the record. But the motion to continue indicates that it was drafted by Father well in advance of the second order continuing the case. Therefore, it is unclear whether Father was seeking additional relief after the second continuance was granted. Because we must remand for the trial court to consider Father's pre-trial motion to participate, we need not consider whether the motion to continue provides an independent basis for vacating the trial court's judgment. However, other cases have decided that a trial court's failure to adjudicate such a motion is grounds for vacating the trial court's judgment. *See, e.g.*, ***Bell***, 206 S.W.3d at 92 (holding that the trial court's final judgment was vacated due in part to a failure to rule on a pre-trial motion to hold the case in abeyance); ***Gilliam***, 2008 WL 4922512, at *3 (holding that the trial court's final judgment was vacated due in part to a failure to rule on a pre-trial motion for extension or postponement of proceedings). In any event, the motion for a continuance is now moot given that we are remanding for a

status update, which appears to have been filed after no rulings were forthcoming on Father's pre-trial motions.

The trial court's failure to rule on Father's motion to participate had an especially significant impact on this case. Because Father's motion was not ruled upon prior to trial, he was not permitted to participate in the hearing on the UIFSA petition. Indeed, given the possibility that a motion to continue was still pending at the time of trial,[20] it is not entirely clear from the record that Father was aware that trial was going ahead as previously scheduled. The trial court, however, apparently held Father's failure to appear at or otherwise participate in the trial against him, as it denied Father's request for credit on alleged amounts paid toward support of the child in light of Father's failure to offer evidence of such payments.

Moreover, the trial court provided absolutely no explanation for the denial of Father's motion to participate at trial. As previously discussed, controlling caselaw mandates that trial courts provide "reasons for either granting or denying each motion." *Bell*, 206 S.W.3d at 92 (citing *Winstead*, 23 S.W.3d at 303). Here, not only did the trial court wait until after the final hearing to inform Father that he would not be transported to participate, but it gave absolutely no explanation for the denial. Thus, the trial court's decision to address this motion in this manner certainly "give[s] the impression that [Father] [wa]s being ignored." *Reese*, 2007 WL 1452688, at \*4–\*5 (citing *Bell*, 206 S.W.3d at 91). Furthermore, as previously discussed, the fact that Father did not set his motion for hearing is no support for the denial. *See Gilliam*, 2008 WL 4922512, at \*3; *Bell*, 206 S.W.3d at 91; *see also Chastain*, 2004 WL 725277, at \*2 (noting that "such an effort would have been futile and counterproductive").

The requirement that the trial court states its reasons for granting or denying the motion also includes the duty to consider alternatives means by which an incarcerated party can participate, even when not expressly requested by the incarcerated party. *See Knight*, 11 S.W.3d at 906. For example, in *Knight*, the incarcerated party filed a motion seeking only to stay the proceedings or to be transported so that he could participate in person. In addition to the trial court's failure to rule on this motion, we also took issue with the trial court's failure to consider

> any of the other alternatives available to it, including, but not limited to, offering Husband the opportunity to testify by videotaped deposition, allowing Husband to participate in the trial by telephone, conducting the trial at a DOC facility, or providing Husband the opportunity to participate at trial through the use of video communications technology.

new trial.

[20] See footnote 19, *supra*, for a discussion of this motion.

*Id.*; *see also* **Reese**, 2007 WL 1452688, at \*5 ("We, therefore, vacate the final divorce decree in its entirety and remand this case for a new trial with directions that Husband be allowed to participate at trial by telephone."). The same is true in this case. Although Father's motion to participate only asked that he be transported to participate in the proceedings in this case in person, the trial court was required to consider other alternative means by which he could participate, in ruling upon his motion. Therefore, "[i]t was error for the [t]rial [c]ourt to enter final judgment without specifically ruling upon [Father's] request for personal appearance . . . and without affording [Father] opportunity to present testimony of himself and/or others by deposition." **Cherry**, 1989 WL 155362, at \*5.

Father's inability to participate in the hearing also has significant consequences for this appeal. Here, after filing a notice of appeal, Father requested that the State be ordered to file the trial transcripts in this matter. That motion was denied, as the appellant has the responsibility to file either a transcript or a statement of the evidence if a transcript is unavailable or financially beyond the means of the appellant. *See* Tenn. R. App. P. 24(c) ("If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, or if the trial court determines, in its discretion, that the cost to obtain the stenographic report in a civil case is beyond the financial means of the appellant or that the cost is more expensive than the matters at issue on appeal justify, and a statement of the evidence or proceedings is a reasonable alternative to a stenographic report, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."). Father has been declared indigent in this appeal, which suggests that he could have used the statement of the evidence procedure outlined in Rule 24. Indeed, Father attempted to file a statement of the evidence in the appellate record. The statement, however, is not a recitation of the evidence presented at trial, but an outline of Father's legal arguments. This is entirely unsurprising, as Father was not allowed to be present in any fashion for trial and therefore had no opportunity to hear any evidence presented by Appellee against him. Additionally, as explained above, it appears that no evidence was even properly presented at trial and admitted in the record.

Despite the fact that Father's purported statement of the evidence contains no recitation of evidence, neither Appellee nor the trial court questioned this document. *See id.* ("If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement."). While the trial court had no obligation to object to Father's statement of the evidence, it certainly had the power to correct it. *See* Tenn. R. App. P. 24(f) ("The trial judge shall approve the transcript or statement of the evidence and shall authenticate the exhibits as soon as practicable after the filing thereof or after the expiration of the 15-day period for objections by appellee, as the case may be, but in all events within 30 days after the expiration of said period for filing objections."). Moreover, Appellee also made no effort to supply either a transcript or a statement of the evidence to this Court. We have held, however, that when a party is unable to prepare "a fair and accurate statement of the evidence because he was not afforded the opportunity to

participate in the trial, some of the burden to prepare a full and accurate statement of the evidence f[alls] to [the State]." **Reese**, 2007 WL 1452688, at *3.

Still, given that there were no objections to Father's statement of the evidence, we would typically deem it approved by the trial court. *See* Tenn. R. App. P. 24(f) (stating that even where the trial court does not explicitly approve a statement of the evidence, in the absence of an objection, it "shall be deemed to have been approved and shall be so considered by the appellate court."). Additionally, in the absence of a proper transcript or statement of the evidence, this Court usually presumes that sufficient evidence existed to support the trial court's decision.[21] *See **Irvin v. City of Clarksville**, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1988) (one citation omitted) (citing **Daniel v. Metropolitan Gov't of Nashville**, 696 S.W.2d 8, 10–11 (Tenn. Ct. App. 1985)). In this case, however, the statement of the evidence is simply not proper, as it does not "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(c). Therefore, it is clear that Father's exclusion from trial not only prevented him from responding to the allegations against him, but also prevented him from mounting an appeal that has any likelihood of prevailing.[22]

In sum, the trial court failed to make factual findings as required by Rule 52.01, failed to timely rule on Father's pre-trial motions, and failed to provide adequate explanation at least as to why Father's motion to participate was denied. Even more importantly, it does not appear that the trial court's ruling was predicated on any properly admitted evidence. These failures are especially prejudicial because they relate directly to Father's ability to participate in the proceedings against him. Under these circumstances, the trial court's final order must be vacated, and this cause remanded for the trial court to conduct a new trial and rule on Father's motion to participate before the new trial. Therefore, the remaining issues Father raised, regarding whether Georgia is a necessary party and whether the trial court erred in calculating child support owed, are pretermitted.

---

[21] This is especially troubling given our determination that no evidence was likely even presented in the trial court.

[22] Because our ability to conduct meaningful appellate review is drastically hindered when there is no indication in the appellate record of what evidence the trial court relied on in deciding a case, we encourage the parties and the trial court to work together to ensure that a proper record is prepared should a future appeal be filed. *Cf. **Ogle v. Seigler**, No. E2010-00763-COA-R3-CV, 2011 WL 1434694, at *2–4 (Tenn. Ct. App. Apr. 15, 2011) ("Appellant filed a Statement of Evidence in this case, but our examination shows it does not convey a fair and complete account of what transpired in the Trial Court with respect to the issues on appeal . . . . The Trial Court was never called upon to determine the fairness of the Statement, since appellee did not object to it or file his own at the trial level. . . . In order to expedite a just resolution of this case on its merits, we remand the case to the Trial Court for a ruling on the fairness and completeness of the Statement of Evidence. *See **Taylor v. Allstate**, 158 S.W.3d 929 (Tenn. Ct. App. 2004). At this juncture, we cannot rule on the issues raised by appellant without a complete and fair Statement of Evidence, and if the parties cannot agree on a Statement of Evidence, it devolves upon the Trial Judge to prepare a Statement of Evidence for appellate review.").

## CONCLUSION

The judgment of the Juvenile Court of Memphis and Shelby County is therefore vacated and remanded for a new trial consistent with this Opinion. Costs of this appeal are taxed to Appellee the State of Tennessee, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE